FULLER DOZIER v. THE STATE.

No. 4586.    Decided November 14, 1917.

**1.—Murder—Continuance—First Application.**

Where the crucial points in the case, on a trial of murder, revolved around the pistol and the horse tracks made and introduced in evidence an application for continuance, the diligence of which was not controverted, should have been granted for the absent testimony, which excluded possession of the pistol by the defendant, and the testimony of the other absent witness would have shown that the horse tracks did not fit in as contended by the testimony of the State.

**2.—Same—Constable—Serving Process.**

A constable is legally authorized to serve process, and the State's contention that the diligence is not sufficient because process was placed in the hands of a constable instead of the sheriff is untenable.

**3.—Same—Evidence—Bloody Clothes—Practice.**

Where, upon trial of murder, there was no question of the fact that deceased had been shot in the manner indicated by the testimony, and the clothes of deceased could have served no useful purpose, it was reversible error to introduce them in evidence, and this by bringing them before the jury and having

them explained at length by the district attorney, although they were not in fact bodily introduced in evidence.

### 4.—Same—Evidence—Checks—Pocketbook—Circumstances.

Where, upon trial of murder, the State contended that a check which defendant had given deceased could not be found on the body of deceased, and there was an issue as to whether other checks were forgeries, and that defendant and deceased had had various business transactions before the shooting, there was no error in permitting the State to introduce in evidence checks given by defendant to deceased and by deceased to defendant, and the circumstances surrounding them.

Appeal from the District Court of Young. Tried below before the Hon. William N. Bonner.

Appeal from a conviction of murder; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Thos. G. Binkley* and *C. W. Johnson,* for appellant.—On question of continuance: Barnes v. State, 168 S. W. Rep., 858; Medford v. State, 174 S. W. Rep., 607; Harris v. State, 172 S. W. Rep., 1146; Truett v. State, 168 S. W. Rep., 522.

On question of bloody clothes: Cole v. State, 75 S. W. Rep., 527; Williams v. State, 136 S. W. Rep., 771.

On question of admitting checks: Menefee v. State, 149 S. W. Rep., 138.

On question of overruling application for continuance: McMillan v. State, 146 S. W. Rep., 1190; Davis v. State, 141 S. W. Rep., 264.

*E. B. Hendricks,* Assistant Attorney General, and *Leslie Humphrey,* for the State.—On question of bloody clothes: Durphey v. State, 165 S. W. Rep., 181; Welch v. State, 147 S. W. Rep., 577.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and allotted thirty years confinement in the penitentiary.

The record is voluminous and contains a great many details unnecessary to state. The case in brief is, that appellant and deceased, young men, living in the same neighborhood, had long been intimate friends, socially and in business, deceased being twenty-one and appellant eighteen years of age. There had been trading between them, and checks passed from one to the other. Appellant had bought cattle from deceased, for which he had given a check for $150. The State shows deceased in possession of that check on the morning previous to the supposed time of the killing on the following evening. When his body was found this check was missing. On the morning previous to the killing in the evening appellant was at the house of a sister of deceased and remained until about 2 o'clock, and assisted in hanging wall paper. It is shown that deceased called appellant over the phone twice before appellant agreed to go to the home of the deceased. The mother of

deceased testified that she did not see appellant but heard his voice as he rode up to the house calling to the deceased, asking him if he was ready, or words to that effect. They were supposed to have ridden together from the home of deceased. This was something like perhaps between 2 and 3 o'clock in the evening. Deceased was never seen alive afterward. On the morning of the day on which deceased was killed appellant borrowed a shotgun from his brother-in-law and returned it the following day. The sister of deceased testified that while appellant was at her house assisting in hanging the wall paper she did not notice any pistol about him, and if he had one she did not discover it. It is in evidence that appellant sought to but failed to buy a pistol some time previous to the homicide. This was proved by a merchant. Appellant was never seen with a pistol, and the record discards the idea that he carried a shotgun on the day of the homicide. The deceased was killed by being shot in the back of the head with a rifle or pistol. The State's theory was that deceased was killed by a pistol owned by appellant's father, and the case was prosecuted only upon that theory. There is considerable evidence in the record in regard to tracks of horses and men. It seems that they trailed these tracks on a road leading east from deceased's home to the Brazos river. There the riders seemed to have alighted and led their horses across the river, the water being shallow and only fifteen or twenty feet in width. There is no evidence that 'the boots worn by the boys had been wet, so far as the writer recalls this testimony. After getting through the water there was some evidence of foot tracks on the sand in the bed of the river, the bed of the river being something like one hundred yards wide at that point, the water only covering a small portion of it. At a certain point these parties who made the foot tracks, from the testimony, mounted their horses. Witnesses testifying in regard to this matter state that the horses began running from that point. The State's theory from the tracks was that the horse supposed to have been ridden by deceased was in front, followed by the horse supposed to have been ridden by appellant. This race continued about a mile. Seven or eight hundred yards of this was through thick brush and briers, brambles and undergrowth. The animal of the deceased the next day was found wandering around and was shown to have been ridden hard. No witness, as the writer recalls the record, testified that either of the animals had any scratches or abrasions upon them. After emerging from this thicket they entered rather an open wooded territory and ran by a plum thicket. After passing that a short distance there was found a pool of blood and deceased's body was supposed to have been dragged from that point into the plum thicket about seventy-five yards away, and there left. There is also evidence showing that the animal supposed to have been ridden by deceased was led from there to a wire fence by the rider of the other horse and turned outside. They trailed the tracks of the other horse from that point to the residence of appellant's father,

where the appellant resided. This statement is only thought to be necessary by reason of the application for a continuance.

The State relied upon tracks, and the fact that the boys left the home of deceased in company, riding horses whose tracks fit those that were followed, one being shod all around supposed to have been ridden by appellant, and the other unshod all around, supposedly ridden by deceased. The sheriff following these tracks went to the home of appellant's father and called for any arms that might be in the house. Appellant was not at home, but his father was. His father gave permission to examine the house, and also told the sheriff that he had a pistol in his trunk which he had had à long time. He unlocked his trunk and gave the pistol to the sheriff. This is the pistol around which the State made its case. It was a very large pistol, and showed to have been fired once more or less recently. The testimony is at variance on the question of the length of time prior to this that it had been fired. The father of appellant stated at the time he gave it to the sheriff there was one chamber that had been fired, and that he had fired it, and made mention of the circumstances. The sheriff with a chisel took two shoes from appellant's horse, one from the left front and the other from the left hind foot. In wrenching them from the feet of the animal the shoes became twisted and warped. The sheriff with a hammer undertook to straighten them. He says he compared these with the tracks he followed and they fit fairly well. The blacksmith who had shod the horse, whose name was McCann, took the other two shoes from the horse and followed these horse tracks and compared them. He took the shoes off as a blacksmith would, without injury to the shoes, and would have stated if present that they did not fit the tracks; that he followed the same tracks as did the sheriff and compared the shoes with the tracks.

Appellant made an application for continuance on account of the absence of his father and McCann. The father was served, but was sick, furnishing the certificate of a doctor to that effect, and his inability to attend the trial. There was an affidavit filed to the same effect. McCann had left the State temporarily on a business errand a day or two before the process could be served. A sufficient statement of the facts expected to be proved by these absent witnesses has been made, except alibi by McCann. The State, to meet this condition, agreed to the taking of the depositions of the father of appellant and let it be used before the jury. Appellant would not consent to this unless the State would agree that the testimony was true. To this the State would not agree. The contention was also made that the diligence was insufficient. This is the first application, and the diligence is not so strict in regard to the first as it is to subsequent applications for continuance. Certainly, it could not be said otherwise because he was served with process in ample time and at the same time all the other witnesses were served, and all attended who were served except

the father. We think the evidence shows diligence in the issuance of process for the witness McCann. He lived but a few miles from the courthouse. Process was issued on about the 9th of the month, and the officer immediately served process on those he could find, and his return showed McCann absent. The facts show he had gone to another State on business matters and would not return for about a month. The State made the contention that the diligence was not sufficient again because process was placed in the hands of a constable instead of the sheriff. We hardly think this to be a serious contention. The constable was legally authorized to serve the process, and successfully did except on McCann. The crucial points in the case under the facts revolved around the pistol and horse tracks. If appellant could show that he did not have this pistol; that his father had it, and under such circumstances it could not have been gotten by him, or used by him, it was important inasmuch as the State hinged its case upon that particular pistol. The father would have sworn that he had had this pistol a great while; that he kept it in his trunk locked and carried the key himself and nobody was permitted to go into that trunk; that he kept his private papers and quite a lot of things in the trunk and kept it locked at all times, and it was impossible for this boy to have gotten the pistol out of that trunk without this key. His evidence would have excluded possession of the pistol by his son. It might also be added that the State's contest over the continuance was not well taken except on the question of diligence. This is the statute. We do not gather from this record that either of the witnesses was absent by appellant's consent or procurement. If the State could have shown that appellant was instrumental in keeping these witnesses away, his application for continuance would have been properly overruled, but there is nothing to justify that conclusion.

There is another question that is reversible error. The State introduced the bloody clothes over the objection of appellant. Deceased was shot squarely in the back of the neck and just below the edge of the hair, the bullet coming out in front just under the left jaw. This was the only wound on the body. He had on an overcoat besides his other clothing and these were introduced before the jury. These clothes could serve no useful purpose. There was no question of the fact that deceased had been shot in the manner indicated. There was but one shot fired. There is a contention by the State that the clothes were not actually introduced in evidence. The bill of exceptions shows that the clothes were handed the witnesses, who were asked to and did explain where the bullet hole passed through the edge of the collar of the overcoat, and some of the other clothing. This was all brought out before the jury and the clothes were exhibited and explained at length by the witnesses in the presence of the jury, who saw and heard it all. Because the State did not go further and specifically introduce the clothes before the jury, the contention is made that this is not a violation of the decisions with reference to this matter. We think this would be

a travesty. These clothes were not admissible, and it was done in such way as to get the facts all before the jury without directly introducing the bloody clothes.

The State, over objections of appellant, was permitted to introduce evidence of checks given by defendant to deceased and by deceased to defendant, two of which brought an issue as to whether they were forgeries. These boys had been doing business with each other, and one of the checks given to deceased by appellant was for $150 for cattle bought from deceased. It was known that deceased had this check and another in his pocketbook a short time before they rode from the home of deceased. This pocketbook was examined on being taken from the dead body and the checks were not found in the pocketbook. There was another check found, in a cavern fronting on the Brazos river, which had been torn to pieces. This check was for $400. There was some question whether deceased wrote this check, but it was torn up, found by the officers in trailing the tracks and put together, photographed and is in the record. We are of opinion, under the circumstances of this case, these matters were admissible. Several reasons might be given, but we think unnecessary to discuss. For the reasons indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*