# NOVEMBER, 1924.

---

### John Trigg v. The State.

No. 7948.   Delivered November 15, 1924.

Rehearing denied March 11, 1925.

**1.—Murder—Evidence—Clothing of Deceased—Admissible When.**

On the trial of this cause it was not error to admit in evidence the coat worn by deceased at the time of the killing. Such evidence ordinarily is receivable when serving to establish some circumstance leading to the identity

of the deceased, or the cause or manner of the injury. Such evidence however, should not be admitted where the purpose is to inflame the minds of the jury and where no light is thrown upon the manner in which the wounds were inflicted, nor their location on the body of the injured party. The rule is stated by Mr. Branch in Sec. 1855 of his Ann. P. C. at page 1021.

**2.—Same—Improper Argument—When Invited—Not Reversible Error.**

Where counsel for appellant in his argument, goes out of the record and presents and discusses matters not in evidence, a reply to such argument by the district attorney will not constitute reversible error. Such arguments by both counsel for appellant and the state are highly improper, and should not be indulged, nor permitted by the trial court. See Branch Ann. Tex. P. C. Sec. 363.

**3.—Same—Argument of Counsel—Personalities—Improper.**

Personalities indulged in by both counsel for appellant and the state in their argument are improper and reprehensible, but will not constitute reversible error, unless pertinent to some issue in the case, or calculated to prejudice the jury.

**4.—Same—Special Charges—Properly Refused—When.**

Special charges that are argumentative, and upon the weight of the evidence, and violative of the rule against grouping facts, are properly refused.

**5.—Same—Special Charges—Covered in Main Charge—Properly Refused.**

Where the main charge of the court ·clearly and correctly presents the law of manslaughter and submits the theory of appellant on that issue, special charges requested on the same issue are properly refused.

**6.—Same—Self Defense—Special Charge—Properly Refused.**

Where the main charge of the court properly submitted the law of self defense, in its application to the theory of appellant, it was not required that special charges presenting this issue should be given.

**7.—Same—Special Charges—Properly Refused.**

It is well settled that in framing instructions it is regarded as improper for the trial court to single out and give undue prominence to isolated portions of the evidence. Such an instruction is calculated to give undue weight to the evidence thus brought to their notice, and an instruction vicious in this respect may be properly refused. And this rule is especially applicable where the main charge of the court has correctly and fairly submitted all issues that are presented in such requested special charges. See Pinkerton v. State, 249 S. W. 1066, Ray v. State, 88 Tex. Crim. Rep., 197; Ency. of P. and P., Vol. 11, p. 185.

**8.—Same—Bills of Exception—To Charge of Court—Insufficient.**

Where there is no exception taken to the failure of the court to embrace an issue presented in a special charge in the main charge, the refusal of the special charge presents no error. Unless a special charge is presented to the trial judge within the proper time required by law, it will not be considered on appeal. See Linder v. State, 250 S. W., 706.

ON REHEARING.

**9.—Same—New Trial—On Newly Discovered Evidence—Properly Refused.**

Where a witness is newly discovered, within thirty minutes after, the verdict is returned, and it is disclosed that he had made conflicting affidavits

as to what his testimony would have been, on the hearing of appellant's motion for a new trial, and the trial court finds that the testimony of such witness is not probably true, and would not have affected nor changed the result of the trial, the action of the trial court in refusing a new trial on this ground, was not error. No abuse of the discretion of the court in overruling such motion is shown. See Branch Ann. P. C., 124-131 inclusive.

Appeal from the Criminal District Court of Dallas County. Tried below before the Hon. Felix D. Robertson, Judge.

Appeal from a conviction of murder; penalty, five years in the penitentiary.

The opinion states the case.

*A. H. Mount, J. J. Fagan, A. U. Puckitt* and *A. S. Baskett,* of Dallas, for appellant.

*Shelby Cox,* District Attorney, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of five years.

Appellant, using a pistol, shot and killed Will Nash. It was shown by the physician who attended the deceased that six bullets entered his limbs and body from the rear, four of them entering his back and one entering each arm.

The tragedy occurred upon one of the streets of Dallas. According to the testimony of eye-witnesses for the State, the deceased, after walking out of a cafe, directed his steps slowly towards the edge of the sidewalk, facing the street and holding his head down. Appellant approached at a rapid gait with his pistol in his hand raised in a shooting position. The deceased looked up, saw the appellant and ran. No pistol was in the hand of the deceased at the time. Appellant, at a few feet distant, pursued the deceased, firing as he went. At some time during his retreat, which was around an automobile, the deceased got his pistol in his hand but without raising it, sank down upon his back.

The deceased was a brother of the appellant's wife and was under a charge of murder for killing the appellant's son. On the occasion of the homicide, appellant was in the city of Dallas for the purpose of having a conference with the prosecuting attorneys touching the preparation of the case against the deceased for trial. According to the testimony of appellant, while walking upon the street with his head down, he noticed a man about six feet from him making a rapid movement at the waistband of his clothes. Raising his eyes, he recognized the deceased and saw him drawing a pistol. Appellant then got out his pistol. The deceased fired and ran to the edge of the street. Appellant thinking he was trying to get be-

hind an automobile, which was nearby, shot at the deceased. Quoting him, appellant said:

"I shot one time with my gun just as fast as I could. I don't know where I shot him, I don't know whether I ever hit him or not."

Appellant said that the meeting was unexpected, and that he shot in order to protect his life; that he became excited and frightened upon meeting Nash who was his enemy. He had been accosted by parties on the road some days before and recognized one of them as the deceased. Fearing harm, he armed himself, and thus accounted for the possession of the pistol at the time of the homicide. The deceased was also armed, and there was found at the time he fell a pistol in his hand. One of the cartridges was empty. The other chambers were loaded. The pistol was jammed by a cartridge, and the cylinder would not revolve.

The State introduced the blue ducking coat worn by the deceased, which was punctured with six bullet holes corresponding with those upon the body and arms of the deceased. The testimony introduced by the State identified the coat and accounted for its possession in the interim between the homicide and the trial. It was proved by the physician that the wounds on the deceased and the punctures in the coat corresponded.

In a number of bills of exceptions complaint is made of this procedure. Exceptions were made and preserved at the time. The rule touching the receipt in evidence of the garments worn by the deceased is well understood. Ordinarily they are receivable in evidence when serving to establish some circumstance leading to the identity of the deceased or the cause or manner of the injury, (Underhill on Crim. Ev., 3rd Ed., Sec. 495; Campbell v. State, 8 Texas Crim. App. 84; McCue v. State, 75 Texas Crim. Rep. 137; Amer. & Eng. Ann. Cas., 1918C, 674; Middleton v. State, 86 Texas Crim. Rep. 307), or to assist the jury in solving some material matter which is either controverted or in doubt. Underhil on Crim. Ev., 3rd., Sec. 101, note 89; Adams v. State, 48 Texas Crim. Rep. 452; Boyd v. State, 50 Texas Crim. Rep. 138; Ozark v. State, 51 Texas Crim. Rep. 106. Otherwise the admission of the clothing of the deceased in evidence is improper. Underhill on Crim. Ev., 3rd Ed., p. 105, notes 2, 3, and 4; also Dozier v. State, 82 Texas Crim. Rep. 321; White v. State, 83 Texas Crim Rep. 252. Upon the record in the present case we have observed no legal reason for receiving the testimony mentioned. See Cole v. State, 45 Texas Crim. Rep. 232; and other cases listed by Mr. Branch in his Ann. Texas P. C., 1855, subdivision 4.

The reason for rejecting this character of evidence is that without throwing light upon the merits of the controversy, it tends to inflame the minds of the jury. The transgression of the rule against

its admission, however, is not ordinarily considered error justifying a reversal where the evidence sustains the conviction and the penalty assessed gives no indication that it may have been affected by passion or prejudice on the part of the jury. So far as we are aware, in no case where the evidence of guilt is sufficient and the lowest penalty assessed has the receipt of such evidence worked a reversal. The case of Long v. State, 48 Texas Crim. Rep. 179, is an illustration. See also Hughes v. State, 252 S. W. Rep. 774.

· In Bill No. 6 complaint is made of alleged improper argument. From the bill, as qualified, it is shown that it was in evidence that the deceased had killed the son of the appellant and was charged with murder. No details were in evidence. Counsel for the appellant, in his argument, told the jury that the deceased had murdered the son of the appellant in cold blood. Objection to this was sustained, but the matter was pressed. Counsel for the appellant said to the jury that the deceased, Will Nash, was a wilful and deliberate murderer and insisted that the fact that he had murdered the appellant's son should excuse the appellant of the homicide. Replying to these remarks, State's counsel said to the jury that there were circumstances which go to show that the killing of the appellant's son was not an assassination but that the homicide was brought about by the misconduct of the son of the appellant's son towards the wife and daughter of the deceased, and that when State's counsel attempted to prove the cause of the killing and the circumstances attending it, he was prevented from doing so by the objection of the appellant's counsel. Of course, these remarks were out of the record and improper, but we are not able to say that the learned trial judge was wrong in his qualification of the bill to the effect that the impropriety of the argument of the State's counsel was not available to the appellant for the reason that by the argument of his counsel, he went out of the record and made unauthorized statements to the jury to which the remarks of State's counsel complained of were not an inapt reply. Mr. Branch, in his Ann. Texas P. C., sec. 363, cites numerous decisions of this court holding that the accused is not entitled to complain of improper argument of State's counsel which is occasioned and justified by the argument of his attorney. Among these are Baker v. State, 4 Texas Crim. App. 229. The court, of his own motion, would have been justified in withdrawing the improper remarks, but appellant's counsel having by his conduct invited the response made by State's counsel, the matter cannot be made a ground for reversal.

Bill No. 7 deals with some mutual charges of unprofessional conduct upon the part of the attorneys. It seems from the bill, as qualified, that counsel for the appellant opened the subject by uncomplimentary remarks concerning State's counsel and that he in kind replied. The court, in his qualification, states that the reply

was justified and provoked. It seems from the bill that the whole matter was addressed to the personal characteristics of the attorneys rather than to. any pertinent issue in the case. The bill shows no reversible error.

In Bill No. 9 complaint is made of the refusal of the court to give Special Charge No. 3 upon the law of manslaughter. The requested charge is too long to quote. It impresses us as argumentative and upon the weight of the evidence and violative of the rule against grouping facts. Whatever may have been the merits of the charge. there was no omission in the main charge of the court which the special charge could have supplied.

After instructing the jury that if they believed beyond a reasonable doubt that the appellant was guilty of some grade of unlawful homicide and entertained a reasonable doubt as between murder and manslaughter it should be resolved in favor of the appellant. the jury was instructed upon the elements of manslaughter in a charge which in no wise departed from the approved forms; and in a paragraph submitting the matter to the jury, the court. as it occurs to us, did all that the facts demanded. He told the jury that although the law provided that the provocation causing sudden passion must arise at the time of the killing. it was their duty, in determining the adequacy of the provocation, to consider in connection therewith all the facts and circumstances in evidence in the case and anything that the deceased did at the time of the killing or immediately preceding it. In the light of the charge as given upon the subject of manslaughter, the refusal of Special Charge No. 3 was, in. our judgment, not erroneous. The charge itself was innacurate, and the record presents no facts demanding a further charge upon the law of manslaughter in that particular.

The refusal of Special Charge No. 6 was proper inasmuch as the jury was adequately instructed in the main charge embodying the law of self-defense that the matters must be viewed from the standpoint of the appellant.

In Special Charge No. 7 appellant sought to have the jury told in substance that if they considered the fact that the deceased had killed the son of the appellant and that he was aiding in the prosecution, they would further consider whether after the death of his son, appellant at night time saw persons whom he believed intended to waylay him, among whom he recognized the deceased, and that they should further consider whether if at the time of the homicide the deceased by some act done, indicated that he was about to assault the appellant, he would be justified, provided, as viewed from his standpoint, it appears necessary to take the life of the deceased, and that the danger need not be real. With the exception of that part of the requested charge which refers to the alleged effort to waylay the appellant on some former occasion, the

special charge would add nothing to the corresponding paragraph of the main charge in which the appellant's defensive theory was, in our juᵈᵍ⸱ment, adequately submitted to the jury. The special charge, moreover, was subject to the objection that it singled out and instructed the jury upon particular facts and was in its nature argumentative in seeking to group certain evidence. Pinkerton v. State, 249 S. W. Rep. 1066; Ray v. State, 88 Texas Crim. Rep. 197. In Ency. of Pleading and Practice, Vol. 11, p. 185, it is said:

"So, in framing instructions, it is very generally regarded as improper for the trial court to single out and give undue prominence to isolated portions of the evidence."

"Such an instruction is calculated to induce the jury to give undue weight to the evidence thus brought to their notice, and an instruction vicious in this respect may properly be refused."

In his brief the appellant complains of the refusal of the court to give a special charge instructing the jury upon the presumption arising from the use of a deadly weapon by the deceased. We fail to find any exception to the failure to embrace this matter in the main charge; nor do we find that the refusal of the special charge upon the subject was made the subject of exception. Neither do we find that such a charge was presented to the trial judge at the time required by law. See Linder v. State, 250 S. W. Rep. 706, and cases therein cited.

Observing no error warranting a reversal, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Complaint is made that we did not discuss an alleged error in overruling the motion for new trial, one ground of which was purported newly discovered evidence from a witness by the name of Jesse Wade.

Within thirty minutes after the verdict of guilty was returned attorneys for appellant were in consultation with this witness, and within an hour had an affidavit from him which was attached to the motion for new trial. The facts set up in this affidavit comport with the defensive testimony. As soon as attorneys representing the state heard of this affidavit they got in communication with the witness, took him to the district attorney's office, and there Wade made another affidavit contrary to the one attached to the motion for new trial. He was shown the affidavit first made by him and in his second statement says:

"The facts stated in that affidavit (referring to the first) are untrue and incorrectly stated."

His second statement is in accord with the state's evidence upon the trial. Contained in the latter part of such second affidavit occurs this recital.

"Whenever the statement made on February 24th, 1923, contradicts the statement now made by me, then the former statement is untrue in that particular."

The affidavit attached to the motion for new trial was dated February 24th and the one contradicting it on February 28th. Upon hearing of the motion for new trial Wade testified that he was intimidated into making the second affidavit, but winds up his testimony by acknowledging that the statements therein contained were true. The presence of Wade at the court house and the manner in which counsel for appellant got in communication with him appears to be shrouded in mystery. Wade says some man told him he might be wanted as a witness for the defense, and requested him to be present at the court house on the day of the trial; that in compliance with said request he did remain in the court room during the entire trial; that he does not know who the man was and could not identify him, but says it was neither appellant nor any of his attorneys. The only information derived from the record as to how the attorneys got in communication with this purported newly discovered witness is that within thirty minutes after a verdict was returned some person,—and no one could say whether it was a man or a boy—is claimed to have notified one of the attorneys that a witness was in the court house who knew something about the case; this mysterious individual is purported to have brought Wade into the room for consultation with the attorneys, but nobody seems to know who it was.

In explaining his ruling with reference to the matter under discussion the trial judge gives three reasons for denying the motion for new trial in so far as it was based upon the purported newly discovered evidence of Wade; first, that he did not regard the testimony of Wade as newly discovered; second, that he did not believe the facts stated by Wade in his first affidavit to be true because it was contradicted in every material particular by his subsequent affidavit, and was contradicted by the evidence of every witness upon the trial save that given by appellant himself; third, that he was satisfied if Wade had been present and testified upon the trial to the facts set out in his first affidavit it would not have affected or changed the result of the trial.

It is not our purpose to go into any general discussion of the rules governing courts with reference to purported newly discovered evidence as ground for new trial. The subject is fully covered in Branch's Ann. P. C. pages 124-131 inclusive. In Burns v. State, 12 Texas Ct. App. 269, Judge Willson says:

"Application for new trial upon this ground (newly discovered evidence) will be scrutinized with much strictness. They are addresses to the discretion of the court, and where the court has refused such an application, the appellate court will not reverse, unless it shall appear that the court below has abused its discretion, and that thereby injustice may have been done the party."

We observe no abuse of discretion by the court in overruling the motion. It occurs to us he was amply justified in doing so.

The soundness of the original opinion is questioned in disposing of the bill complaining at the introduction in evidence of the coat worn by deceased at the time of the killing. We entertain no doubt that the opinion is sound in holding that such evidence did not call for a reversal. Our former opinion contains this expression: "By the record in the present case we have observed no legal reason for receiving the testimony mentioned." Upon further consideration we have concluded such statement should be withdrawn. The question of blood stains on the garment does not enter into the present case. The coat was originally dark blue but was old and faded to a purplish color. No blood stains were apparent or visible thereon. This however would appear to be immaterial. Whether or not the garment bore blood stains if it was calculated to elucidate any issue in the case it was properly admitted. The state contended that deceased was standing on the sidewalk doing nothing and was unaware of appellant's presence, that appellant, with his pistol drawn, came up behind deceased and shot him six times in the back. For this reason the location of the wounds was material to establish the State's theory as to the manner of the killing. To establish the fact that the shots were fired into the back of deceased the coat was admissible. It would be immaterial that the same fact was shown by other evidence. If the state had desired to so proceed the coat might have been identified and offered in evidence as showing shots from the rear before any other witness testified as to location of wounds on the body of deceased. It would furnish no more ground for objection to this testimony under the facts of the present case than would have been tenable had the state proven by one witness that appellant shot deceased in the back, and then been met with objection when another witness was offered to testify to the same fact. The rule is stated by Mr. Branch in §1855, of his Ann. P. C. at page 1031:

"It is permissible to introduce bloody clothing in evidence only when the introduction serves to illustrate some point or solve some question, or serves to throw light upon the matter connected with the proper solution of the case, and under no other circumstances; but whenever the introduction of such clothing would, in the light of the whole case, aid the jury in arriving at the very truth of the matter, the court should not hesitate to admit its production and exhabition."

Many cases are cited in support of the text which is in accord with Underhill's Crim. Ev., 3d Ed., § 101. The introduction of the coat in evidence in the present case was calculated to aid the jury in arriving at the very truth of the manner of the killing and the position of the parties. Dozier's case, 82 Texas Crim. Rep. 321, 199· S. W. 287, furnishes an illustration where clothing of deceased threw no light whatever on the manner of the homicide. In that case deceased was shot in the back of the neck just below the edge of the hair, the bullet coming out in front just under the left jaw. There was no other wound on the body. The bullet did not pass through any clothing of deceased. It is apparent that the tender or introduction in evidence of the overcoat worn by him at the time of the killing was entirely immaterial, threw no light upon the transaction whatever, and was offered for an improper purpose.

Believing proper disposition was made of the case upon original submission the motion for rehearing is overruled.

*Overruled.*