## Richard Reagan v. The State.

### No. 274. Decided January 12, 1910.

**1.—Murder—Evidence—Opinion of Witness—Manslaughter.**

Where, upon trial for murder, the evidence raised the issues of self-defense as well as manslaughter, on the ground of insulting conduct of deceased towards defendant's wife, and the defendant took the witness stand, there was no error in permitting the State's counsel on cross-examination to ask defendant if he would not have shot deceased for insulting defendant's wife; this was not simply an opinion of the witness, but legitimate testimony.

**2.—Same—Misconduct of Jury—Evidence Dehors the Record.**

Where, upon trial for murder, some of the jurors in their retirement discussed the evidence and drew their conclusions therefrom, there was no error; besides, the bill of exceptions did not specifically point out as to what transpired in the jury room.

**3.—Same—Newly Discovered Evidence—Impeachment.**

Where, after conviction of manslaughter, the defendant, in his motion for new trial set up by affidavit, attached to his motion certain statements of the wife of the deceased, to show that the defendant did not attempt to conceal himself at the time he fired the fatal shot, as newly discovered evidence, but such testimony was controverted by the State, and was of an impeaching and cumulative character, and the diligence was insufficient in not showing why such testimony could not have been had on the trial, there was no error in overruling the motion on this ground.

Appeal from the District Court of Robertson. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley*, Assistant Attorney-General, for the State.

McCORD, JUDGE.—Under an indictment for murder appellant was convicted of manslaughter with a penalty of five years, and from this judgment of conviction has appealed to this court and asks for a revision of the action of the court below.

Briefly stated, the facts show that on the 7th day of May, 1909, in the county of Robertson, the deceased, Knox Whitehead, while plowing in a field was shot down and killed. The facts also show that appellant was the man that killed him; that he lived in Madison County, about nine miles from where Whitehead lived, and that on the morning of the killing the appellant left his home afoot with a gun and a couple of dogs following him, and went on down to the home of the deceased, found him plowing in the field and shot him down, killing him instantly. But one shot was fired and one of the buckshot entered the deceased on the right side of his face and in the right temple and one entered at the point of the chin, and others went through his hat. The scattered condition of the wounds on the body and the holes in the hat show that the man who fired the shot must have been some distance from the body of the deceased at the time the shot was fired. The rows ran north and south in the field where the deceased was plowing. The road passed east and west along the north side of the field. The deceased had reached the north end of the rows, and from the position of his body deceased had about fixed to turn around when he was shot. His head lay towards the fence and about three feet from the fence; the fence was a wire fence; it was about three feet from the wire fence to the edge of the road. Across the road, and some seventeen steps from the north side of the road, there was a hickory tree. Some small bushes lay between the hickory tree and the road —not enough, however, to conceal a person. Around this hickory tree there were some indications that a person had stood. South of the dead body some shot were found in a tree. Also the bushes between the hickory tree and the road had been clipped by shot. The spot where these bushes were clipped, the dead body and the shot in the dead tree, which was south of the dead body, all were in an exact line from the hickory tree. It was thirty-seven steps from this hickory tree to where the dead body was lying and the physical facts surrounding the killing indicated that the party who fired the shot must have been some distance from the deceased when

the shot was fired, and that the same was not fired at close range. The appellant admitted the killing. He was seen by several witnesses going to and from the place of the killing. On the morning of the killing appellant borrowed a gun from one of his neighbors and told him he was going squirrel hunting with it. He returned the gun on the same evening of the killing to the man from whom he borrowed it, the witness from whom he borrowed it being named George Lawson, and when appellant brought the gun back he told said Lawson that he had killed the deceased. The appellant and his wife both testified in the case to acts of intimacy on the part of the deceased with appellant's wife, she testifying that she was the stepdaughter of deceased, and that the deceased had been criminally intimate with her both before and after her marriage with the appellant. The appellant claimed that he was informed of this only a day or two before the killing, and that on the morning he borrowed the gun and went down to where the deceased lived, found him plowing in the field and that he went up and stopped in the road some eight or nine feet from the end of the rows on the outside of the fence, and that when the deceased came plowing to the end of the rows the deceased looked up and saw him, the appellant, threw his hand to his hip and appellant, thinking that he was going to shoot him, fired and killed deceased, and when he fell, he, appellant, went up to the edge of the fence, looked at him, saw the blood running out of his forehead and went on back home; that when the deceased threw his hand to his hip pocket like he was going to draw a pistol, he, the appellant, stepped back two or three steps which threw him to the north edge of the road when he fired; that he did not kill the deceased for the intimacy and insults offered to his wife, but that he killed him in self-defense, and that he had gone down there to exact a promise from the deceased that he would desist in his conduct towards the appellant's wife. This is a sufficient statement of the facts of the case to explain the issues raised.

1. The case was submitted to the jury on murder, manslaughter and self-defense. No complaint in the motion for new trial was made to the charge of the court and the charge seems to have fairly presented the law applicable to the facts of the case.

2. We find in the record but one bill of exceptions. This bill is to the action of the court in permitting the State's counsel, over the objection of appellant, to ask the appellant while on the witness stand, "Would you not have shot the deceased for what deceased had said about your wife or what he had done to your wife, even though deceased had not placed his hand behind him or made any demonstration?" And to the answer of the appellant that he would not have killed the deceased on account of what he had said about his wife or done to his wife, but that he killed him on account of

the demonstrations made. This was objected to because it was a hypothetical question and because same called for an opinion of the witness and did not tend to establish a fact. We are of opinion that the court below did not err in permitting this question to be asked and answered. It has always been held that the intent with which an act is done or which may accompany the act, can always be inquired into. The appellant in his examination in chief, while he had testified to the conduct of the deceased towards his wife, testified further that at the time he shot the deceased the deceased was making demonstrations that threatened death, and that he, appellant, immediately fired. We are of opinion that it was a proper question to propound to the appellant that the jury might know whether the killing was in self-defense or was from passion aroused by an adequate cause. We, therefore, hold the court below did not err in permitting the question to be asked and answered.

3. Appellant in his motion for a new trial complained that the jury, while deliberating upon the case, was guilty of misconduct in that the jury received testimony other than that which was produced upon the witness stand, the other testimony being as follows: After the jury had been charged by the court and had retired to consider their verdict, and before the verdict of the jury had been arrived at, the following language, or language of similar import, was indulged in by the jury, to wit: "That it seemed that the defendant's wife, Mrs. Richard Reagan, was as anxious to do it, or to cohabit, as Knox Whitehead was." The contention being that this was new testimony, was an inference or conclusion drawn by the jury not authorized by the testimony, and further that while the jury were deliberating upon their verdict, some member of the jury in the hearing of one Gilmore, who was a member of the jury, said: "I do not think a man ought to be shot down about a damn whore like that woman is." The motion for new trial is sworn to by W. W. Wilson, one of the attorneys for the appellant, and in the affidavit of said counsel it is stated that the names of the two jurors above mentioned are unknown to the witness; that J. R. Gilmore told counsel for the appellant that he heard the language imputed to the said jurors, but did not tell said counsel what said language was and did not give him the name of the said two jurors. The juror Gilmore was not brought before the court, nor was any of the other jurors examined with reference to what transpired in the jury room. The affidavit in itself only speaks of information or rumors that seemed to be floating around. It is not specific and fails to show that any such thing transpired in the jury room. In this uncertain condition of the record, and in the absence of any positive proof that such a thing transpired in the jury room, this court would not be authorized to disturb the verdict, but conceding that the thing transpired as stated in the motion

for new trial, we are not prepared to say that this was misconduct, nor receiving additional testimony, but was simply the inference or conclusion drawn by the jury from the testimony elicited upon the trial. We do not understand that juries, in reaching their verdicts, are denied the right of reasoning out propositions that are submitted to them and drawing deductions and conclusions therefrom. They have a right to weigh testimony that comes before them; they have a right to discuss it in the jury room and give their reasons as well as to draw their conclusions and to express these conclusions to one another. This was not additional testimony and we think was a legitimate remark on the part of the jury. See Jack v. State, 20 Texas Crim. App., 656, in which this court held that it would be a dangerous and exceedingly pernicious practice for the courts to permit the sanctity of the jury room to be invaded and jurors be interrogated as to the arguments used in their deliberations, and the influence of such arguments upon their minds, and the reasons and considerations upon which their verdict was based.

4. The next ground of the motion for new trial insisted upon by appellant is that he should have been granted a new trial because of newly discovered testimony that had come to his knowledge since the trial of the case, and that by no kind of diligence could have been discovered before the trial, and that if he had had said testimony it might have probably changed the result and in his motion for new trial he sets up that Mrs. Knox Whitehead, the wife of the deceased, will testify that if appellant shot the deceased, or whoever shot the deceased, he was standing in the road when he fired and was not attempting to conceal himself at the time of the firing of the gun; that she was sitting on the gallery of the house some 200 or 300 yards distance and that when she heard the firing of the shot she looked up and saw the appellant or the party who fired the shot with a smoking gun in his hand in the road, stepping up towards the fence and towards the dead body of the deceased. They attached to the motion for a new trial her affidavit, and the purpose and object of this testimony, appellant says, was to show that he did not attempt to conceal himself at the time he fired the shot, but that the same was done openly, and that said testimony tended to support the theory of the appellant that he shot in self-defense. The appellant further contends that he was denied the right of talking to this witness and that said witness had been advised by the State not to talk to appellant and his counsel and that they never could get to see and talk to her. The State denies this, and in its controverting motion attaches the affidavit of the witness Mrs. Knox Whitehead embodying her statement made at the inquest or examining trial in which affidavit she does not mention that she ever saw who it was that fired at her husband; that she heard a gun fire which attracted her attention,

and that she walked out and looked the way her husband was in the field and saw the mule coming up the cotton rows with the plow and that she went near enough to see that her husband was killed, and the next thing was to get help. In view of the fact that appellant was convicted of manslaughter, we are not prepared to hold that this testimony could have changed the result; and that the same is probably untrue; that there was a want of diligence on the part of appellant to procure the same; that the same was impeaching and merely cumulative, and for these reasons we think the court below did not err in refusing a new trial. See Fleming v. State, 54 Texas Crim. Rep., 339, and Harrolson v. State, 54 Texas Crim. Rep., 452.

Finding no error in the record, and believing appellant has had a fair and an impartial trial, the judgment of the court below is in all things affirmed.

*Affirmed.*