### J. B. Salmon v. State.

No. 2052.   Decided March 5, 1913.

**1.—Murder—Statement of Facts—Practice on Appeal.**

A statement of facts containing two hundred and forty typewritten pages is unnecessarily voluminous, and should have been condensed.

**2.—Same—Verdict—Affidavits—Verdict by Lot.**

Where the motion for new trial contended that the verdict of the jury was reached by lot, but was not supported by affidavit, the same need not be considered; besides, there was no error in overruling it. Following Pruitt v. State, 30 Texas Crim. App., 156, and other cases.

**3.—Same—Evidence—Self-Serving Declarations.**

Upon trial of murder, there was no error in excluding the self-serving declarations of defendant which had no connection with the killing.

**4.—Same—Evidence—Ill Will—Declaration of Deceased.**

Where, upon trial of murder, there was no contest about the fact that hostility and ill-will existed between defendant and deceased for some time before the killing, there was no error in refusing further testimony as to what a witness understood the deceased referred to in a conversation with the witness about a certain street which defendant was to clear and clean up.

**5.—Same—Evidence—Ill Will—Acts of Deceased.**

Upon trial of murder, where the fact that ill will existed between defendant and deceased was not disputed, there was no error in excluding testimony with reference to conduct of deceased towards a third party showing that deceased had a pistol at his residence.

**6.—Same—Map—Evidence—Dedication of Street.**

Where the dedication of a certain street had nothing to do with the facts concerning the homicide and this matter had been fully explained by other testimony, there was no error in refusing to admit in evidence a certain map to show the dedication of this street.

**7.—Same—Charge of Court—Self-defense.**

It is better practice, in submitting an issue to the jury, to apply the charge of the court to the evidence, instead of submitting the matter in a general way, and where the court followed this practice, there was no error.

**8.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the court's charge on manslaughter was strictly applicable to the facts in evidence, there was no error.

**9.—Same—Charge of Court—Uncommunicated Threats.**

Where, upon trial of murder, the evidence did not raise the issue of uncommunicated threats, there was no error in the court's failure to charge thereon.

**10.—Same—Charge of Court—Communicated Threats.**

Where, upon trial of murder, the evidence clearly established that the threats by deceased and communicated to the defendant were in fact made, there was no error in the court's charge in failing to instruct the jury that the defendant could act upon such threats, whether they were made or not; the defendant not asking any charge thereon.

Appeal from the District Court of Coleman. Tried below before the Hon. Jno. W. Goodwin.

Appeal from conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, and *Snodgrass & Dibrell,* for the State.—On the question of verdict by lot: McAnally v. State, 57 S. W. Rep., 832, and cases cited in opinion.

On question of court's charge on communicated threats: Pena v. State, 38 Texas Crim. Rep., 333; Sue v. State, 52 id., 122; Jones v. State, 53 id., 131; Keye v. State, 53 id., 320; Schaper v. State, 57 id., 201; Allen v. State, 45 id., 468; Bird v. State, 48 id., 188; God-

win v. State, 39 id., 404; Garello v. State, 31 id., 56; Bogan v. State, 30 Texas Crim. App., 466; Bishop v. State, 43 Texas, 390.

PRENDERGAST, Judge.—Appellant appeals from a conviction for murder in the second degree with a penalty of twenty years in the penitentiary assessed.

The statement of facts has about 240 typewritten pages. It is unnecessarily voluminous. It could and should have been contained in less than one-fourth the number of pages. Yet, while so voluminous, we have read and studied it all thoroughly. There are but few questions in the case necessary to be decided.

The killing of Dr. McCord, the deceased, by Dr. Salmon, the appellant, occurred on March 30, 1911, in the small unincorporated town of Christoval in Tom Green County, where he was indicted. The venue was properly changed to Coleman County, where this trial occurred.

Dr. Salmon was a practicing physician and had lived at Christoval for many years. Something like four years before the killing Dr. McCord, the deceased, who was also a practicing physician, moved to, and located at Christoval. Not a great while after Dr. McCord located there, ill-feeling was aroused between them, which grew worse and to such an extent that Dr. Salmon himself testified they had not spoken for some year and a half to two years before the killing. The whole record is full of the fact that ill-feeling existed and had existed for a long time, each against the other, and that this continued with more or less intensity up to the very time of the killing. These parties lived on the same block and their places fronted the same street. Appellant lived on the southwest corner of the block, his premises lying along side of the main street of the town; the deceased on the southeast corner of the block with only one residence between them. Their offices were on the same street some few blocks from their residences, not a great way apart, fronting opposite sides of the main street. It was altogether proper, if not necessary, for the deceased, in going back and forth from his office to his residence, to pass in front of and around the appellant's and frequently did so during all these years. There was testimony that before the killing, appellant had made specific and direct threats to the effect that he would kill the deceased. There was some testimony to the effect that the deceased made some conditional, or what might be construed to be, threats against appellant. The testimony clearly shows that whatever threats, or conditional threats, deceased is shown to have made against appellant were long before the killing, communicated to, and known by, him. There is no testimony showing that deceased had made any recent threat against appellant shortly prior to the killing. The testimony unquestionably shows that for some time after the threats or supposed threats were made by deceased against appellant and his knowledge of them, they met at

many different places, in the country repeatedly, and from day to day, and frequently several times during the same day, in said town, and that they met and passed on the streets and in and about the business houses of said town. At no time and in no way does the evidence show that either ever attempted to execute his threats, or supposed threats, unless it be at the very time and place of the killing.

Some six months before the killing, the evidence shows, that the citizens of the town organized a club which had the object of cleaning up the streets, and improving the town for general purposes, and that appellant was one of a committee of five whose business and duty it was to do this. Among other streets that this committee undertook to clean up and work was one that was claimed to be along the east side of Dr. McCord's place in which, and along about the sidewalks of which, were some pecan and probably other trees. This committee claimed that there was a street along the east side of Dr. McCord's premises. He denied this. Whether the street or the ground adjoining Dr. McCord's premises on the east was a street or not, was wholly immaterial in this case. Whether it was a street, and dedicated as such or not, could not, and did not, have had any material effect upon and no immediate connection with the killing. It might be conceded that it was or it was not, and it would not have effected this case. The whole and only effect it could and did have was to emphasize the fact of the hostility of Dr. McCord toward Dr. Salmon on the one hand, and the hostility of Dr. Salmon against Dr. McCord on the other hand. But, as stated above, if there was any one fact, beyond doubt established in this case, it was, that there was a state of ill-feeling and hostility by these parties each towards the other.

The testimony clearly shows that an hour or two before the killing deceased had left his horse at the blacksmith shop to be shod, which was almost directly across the street from appellant's residence. Appellant knew deceased's horse. Shortly before the killing appellant went across the street from his residence to the printing office, which was also diagonally across the street from his residence and within a very short distance of the blacksmith shop. Both were in full view from his residence and from the whole of the way going across from his residence to the printing office. The next house, going up the street toward appellant's office and also that of deceased, was a hotel, which was back some fifteen or twenty feet from the fence surrounding the hotel. The deceased, shortly before the killing, had left his office which fronted said main street, had gotten on the sidewalk on the opposite side, was in his shirt sleeves and going down the side of the street next to the hotel, ostensibly to get his horse from the blacksmith shop. The distance from his office to the hotel was much greater than from the printing office to the hotel. The appellant and the deceased met on the sidewalk, not exactly in front

of the hotel, but nearly so. Besides appellant there were four witnesses to the killing. All of the witnesses other than appellant were disinterested and no kin to either party. Each of these witnesses was at a different direction from the killing and each saw it from a different viewpoint. One witness, Custos Hanan, testified he was sitting on the front gallery of this hotel and saw appellant pass the immediate front thereof. He also saw the deceased going down the same side of the street and saw these parties when they met and the killing occurred. In substance he testified that he saw the parties when they met; that Dr. Salmon said, "You son-of-a-bitch, when you meet me walk around me," and slapped Dr. McCord in the face; "Dr. McCord then kinder stepped back and threw up his hand and then Dr. Salmon shot him; Dr. Salmon shot him twice, and he fell, and he shot him again." All the shots were very close together. Dr. Salmon shot the first time immediately after Dr. McCord threw up his hand and Dr. McCord kinder threw his hand out and grabbed at Salmon's, and he fell when the second shot was fired. Mrs. Hill, who was across the street on the opposite side of the hotel about a hundred yards from the killing, said she was out on her front gallery and while she did not see the parties at the immediate time the first shot was fired, that it attracted her attention and she immediately looked and saw what the parties were doing and the other two shots. She confirms the witness Hanan substantially in every respect. Mr. Welch, another witness, was in the printing shop on the same side of the street of the hotel. He did not see, but heard the first shot, and immediately went to where he could see the parties and did see them and saw everything that occurred between them after the first shot and his testimony substantially confirmed that of Hannan and Mrs. Hill. Mrs. Wilson was across the street from the killing, in her residence, heard the first shot, immediately looked and saw the other two shots and all that occurred and what the parties did, after the first shot was fired. She also substantially confirms the other witnesses. All of these witnesses say in substance that there was no clinching between the parties; that the deceased did not jerk down or otherwise get the appellant upon the ground at any time, and in fact in every way they all dispute the testimony of the appellant as to how the immediate killing occurred. The testimony by all the witnesses, without controversy, shows that appellant's first shot struck the deceased from the front in the stomach, going entirely through the body; that as the deceased began to fall, stagger or stoop over from the effect of this first shot, his body somewhat approached that of the appellant and that appellant then put his open hand up against the body of the deceased and shot him the second shot through the heart, the ball going entirely through the body and the ball also piercing appellant's hand from the back; that after the deceased had fallen and was lying prostrate on the ground, appellant fired the third shot in the top of his head, the ball going

straight into the head from a little to one side and emerging to the skin back of and just below one of his ears. Deceased was wholly unarmed. All of these State's witnesses show that the appellant and deceased were in the act of passing, or just before they passed, each being to the right of the other, which would put appellant on the outside from the fence and the deceased inside nearest to the fence around the hotel.

Appellant, in his testimony, claimed as he was meeting deceased he bore to the left to pass between him and the fence and that deceased passed him on his (appellant's) right side; that just as, or after, they thus met and passed, deceased whirled, threw out his hand and caught appellant in the collar and jerked him forward and down on the ground; that as deceased jerked him down it exposed his automatic pistol in his hip pocket, and that they both then grabbed for his pistol, deceased getting hold of the handle and he getting it around the guard and trigger, each trying to wrest the pistol from the other, and that while in this condition the shooting and killing occurred. He could neither tell on direct, or cross-examination any of the details of the position of himself or deceased at any time during the shots and he could not explain and did not attempt to explain how it was, or the position that he or deceased either was in at the time he first shot him in front in the stomach entirely through the body, the second time in front through the heart entirely through the body and the third time in the top of the head as described. He claimed that he did not know and could not explain, and would not undertake to explain.

Appellant contends, in his motion for new trial, that the verdict of the jury was reached by lot. This motion is not sworn to, and is in no way supported by any affidavit. Under such circumstances the court did not have to consider it. But the court did consider it, and the record shows, heard evidence on it. The evidence on this point was amply sufficient to justify the court to hold against appellant on it. Pruitt v. State, 30 Texas Crim. App., 156; McAnally v. State, 57 S. W. Rep., 832; Keith v. State, 56 S. W., 628, and many other cases unnecessary to cite.

Appellant complains by a bill that the court refused to permit him to prove by the witness McKee what Dr. Salmon had said in Dr. McCord's hearing in a speech long before the killing. The exact time when this is claimed to have been said is not shown by the bill, but we take it, from the record, it was about six months prior thereto. Clearly the testimony excluded was a self-serving declaration by the appellant. It was too remote from the time of the killing, and is in no way shown to have had anything to do with the killing or any influence on anything in connection therewith.

Neither did the court err in refusing to permit the witness Standifer to testify that he understood the deceased to refer to Dr. Salmon, when, in discussing with Dr. McCord about the opening of said street,

deceased said that when they put a gentleman on that street committee he would listen to them. The court permitted this witness to testify fully what was said between the witness and Dr. McCord at the time, and his statement that he understood the deceased was referring to Dr. Salmon was merely his opinion. We take it that from the whole testimony of this witness, giving the details of what was said, it was shown that he had reference to Dr. Salmon and no one else, and his merely further testifying that he understood Dr. McCord referred to Dr. Salmon, could not have added anything to the effect of his testimony. Besides, this testimony could not and would not have effected the result in this case. As stated above, if there was any one thing established in this case it was that a state of hostility existed between Dr. Salmon and Dr. McCord continuously for two years or more before the killing. What we have said on this subject equally applies to appellant's next bill, in which he complains he was not permitted to have the witness Holland tell that he understood witness Duncan was referring to the pistol deceased had at his residence when he run Duncan and others away from his place, and would not let them cut down said trees, in stating "it was the ugliest, meanest old thing I ever saw," some several months before the killing. Besides, the Judge, in qualifying this bill as to the proposed testimony of Holland, clearly shows that no reversible error was committed in not permitting the witness to testify as to what said Duncan meant.

Neither was any error whatever committed, as claimed by two other bills of appellant, wherein in one the court would not permit the map to be introduced for the purpose of showing a dedication of said street and the other to the excluding of a deed. None of these matters could have had any effect upon the trial of this case. The bills and record show that the court permitted the widest scope of inquiry about this street and the deeds thereto and thereabouts, and permitted the map to be introduced for every other purpose, and the deed to be testified about orally. The exclusion of this evidence could in no possible way have effected the result of this case.

In his motion for new trial appellant attacks the charge of the court submitting his claimed defense on self-defense to the jury, in that it is too restrictive and inapplicable to the facts, and he claims that on this point the charge should have been general. It is the better practice, and has uniformly been so held by this court, that in submitting an issue for a finding, for the court to apply the charge of the law to the evidence in the case. After carefully reviewing the evidence in this case on this point, which was solely that of appellant himself, it is our opinion that the court correctly and aptly submitted his claimed self-defense, and that said charge is not subject to the attack made. In our opinion the court correctly submitted self-defense in every phase as favorably to appellant as the evidence and the law would justify.

The charge of the court on manslaughter is strictly in accordance with the statute and applicable to the testimony in this case, and is not subject to the criticism made thereon by appellant.

Appellant in his motion for new trial, in a very general way, complains that the court failed to charge upon uncommunicated threats and to tell the jury the effect thereof. He in no way, by this ground of his motion or otherwise, points out any threat or supposed threat that was ever made by deceased against appellant which was not communicated to him. We have diligently sought, in a careful reading and consideration and reconsideration of the evidence on this point, to find any such threat, and have failed to find any. It was clearly shown, and the appellant himself testified, that all of the supposed threats or conditional threats ever made by the deceased against appellant were communicated to and known by him long before the killing.

Again, appellant claims that the charge of the court on communicated threats was erroneous in that it required the jury to believe that such threats were made; whereas, he contends, that whether they were made or not, if such had been communicated to him, he had the right to act upon them the same as if they had been made.

It is true that the appellant would have had the same right to act where he had been informed that deceased had made threats against him whether, as a matter of fact, deceased had made such threats or not, and the court should have so charged if the evidence raised such issue. The evidence clearly establishes that the threats, or what was claimed to be threats, by the deceased against appellant were actually made. The testimony on this subject was undisputed and clear. There was no controversy about it. The appellant asked no charge whatever on the subject. This being the case, the charge given was all that was necessary.

The judgment is affirmed.

*Affirmed.*