AUGUST TRISTAN v. THE STATE.

No. 15660.   Delivered March 8, 1933.
Reported in 58 S. W. (2d) 84.

The opinion states the case.

*Johnson & Peden,* of Houston, for appellant.

*O'Brien Stevens,* District Attorney, and *E. T. Branch,* both of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, murder; the punishment, 10 years in the penitentiary.

Appellant was found guilty of the unlawful killing of one

Gussie Grace on Christmas night, 1931. The evidence showed that one Freddie Bradley, a brother of the deceased, Gussie Grace, was giving a dance at his house and a number of negroes were present. Clem Robinson, a witness for the state, testified substantially as follows: He went to said party about 8:30 o'clock, and the appellant and one Valentino Pigerino walked in behind him. He went into the living room, and told Bradley that there were two Mexicans standing in the hallway. Bradley went out, and asked them what they wanted, and neither of the Mexicans replied. Bradley then told them that they would have to go, since he was giving a Christmas party and he didn't want fellows like them around. The Mexican who was with appellant told Bradley that he wanted to hear another piece played on the Victrola before he left, and handed Bradley a quarter so that a nickle could be put in the Victrola. When Bradley turned around to put a nickle in the Victrola, some one grabbed him, and Bradley turned around and struck the person who grabbed him. During the time Bradley and the other Mexican were talking, the appellant had an open knife in his hand. About this time, the deceased, Gussie Grace, came out of the living room, and as she ran by the appellant to get to her brother the appellant struck her in the right side with the knife. The deceased grabbed her side and opened the front door and went out of the house. The witness went out behind her and caught her in the middle of the street, carried her to the corner, and phoned for an ambulance.

A doctor testified that the deceased was admitted to the Jefferson Davis hospital on December 25, 1931, and he attended her from January 2 to January 5, when she died. She died as the result of a stab wound about three inches long, which penetrated through the right abdomen, and was about two inches to the right of the midline. The doctor further testified that complications had set up in said wound and the deceased had peritonitis.

The Mexican with the appellant at the time of the difficulty testified for the appellant that they had gone to Bradley's house about 3 o'clock in the evening, and the witness Clem Robinson sold them a pint of whisky. They went back out that night to buy some more liquor, and he stayed on the outside of the house the second time they went there. When the appellant did not come out after about twenty minutes, he went in the house and some negroes were pursuing the appellant, kicking him and hitting him with their fists. They then chased him around. He further testified that he didn't know whether appellant had a knife or not, and he never heard anything about a woman get-

ting cut that night; that the appellant was cut on the jaw near the eye, and he didn't know whether they cut him with a knife or not.

Lee Wilson, a witness for the appellant, testified that the brother of the deceased accidentally cut her. Appellant testified, and admitted opening his knife, but claimed that he was cut before he pulled his knife out, and that Clem Robinson took the knife away from him. He further testified that there were 5 or 6 persons, some of them with knives in their hands, present at the time, and he couldn't tell who cut the woman.

The knife of the appellant was shown to have a sharp pointed blade about five inches long from where it joined the handle, and was known as a Texas Jack.

Freddy Bradley, brother of the deceased, testified positively that he did not cut his sister, the deceased, that night either accidentally or otherwise. He further testified that he did not have any knife, and that the appellant started the fight, and both the appellant and his companion jumped on him, and appellant's companion hit him and the appellant grabbed a knife. He further testified that the witness Lee Wilson had not been invited to his house, and was not there on the night in question.

Appellant's motion for new trial was in part predicated upon newly discovered evidence, it being averred therein that one Christine Cooper would testify that she was present at the time the trouble arose which resulted in the death of the deceased and she saw Buster Bradley, brother of the deceased, strike her with a knife, and the appellant did not cut the deceased, but that she was cut accidentally by her brother, Buster Bradley; that her testimony was not discovered until after the jury had returned a verdict in the case; that the appellant's brother went to the housee of a woman on the same day the verdict had been returned and was telling the owner of said house what happened in his brother's case, and Christine Cooper, who was there at the time, stated that she knew about the trouble, and stated what she had seen, and said brother reported said information to appellant's counsel. Attached to said motion for new trial was the affidavit of the said Christine Cooper.

Appellant's motion for new trial was also based upon the newly discovered testimony of the witness Llewelyn Parker, who had testified in said case. Parker's affidavit was to the effect that he saw the deceased, Gussie Grace, come out of the house running; that she ran out into the street, and his wife went to where the said Gussie Grace was, and in a minute or

two his wife sent for him, and, when he got there, the deceased was leaning up against the wall of a cafe, and his wife was holding her, and he then heard the deceased say that Buster was fighting and stabbed her.

The state contested said motion for new trial, and the court heard evidence upon said motion and overruled same. On said hearing Christine Cooper testified substantially to what she saw as contained in her affidavit to said motion, and the witness Parker on said hearing testified to the same effect as shown in his affidavit attached to said motion. As to the statement made by the decased testified to by the said Parker, a woman by the name of Marie Foster, who claimed to be the said Parker's common-law wife, testified to the same statement, and further testified that she had been summoned as a witness in the case, but neither side had put her on the stand, and none of the lawyers talked to her at the time of the trial, but the appellant's lawyer talked to her on the morning of the hearing. Appellant also testified on said hearing that he had never talked to the said Marie Foster or Llewelyn Parker, and he didn't know what they would testify to until his lawyer told him on the day before the hearing. The state's controverting evidence showed that the witness Parker had testified as a witness on the trial of the case for the state, and had been cross examined by appellant's counsel, and had previously to the trial made a statement in which he stated in effect that he saw the cutting and appellant cut the deceased. The state on said hearing showed by the witnesses Clem Robinson and Freddie Bradley that neither of them knew the said Christine Cooper, and both of them testified positively that she was not present at the house of Freddie Bradley at the time of the difficulty. The witness Clem Robinson also testified on said hearing that, after the deceased was cut, he, the witness, took her to the corner and afterwards Llewelyn Parker and Marie Foster came to where they were; that he was close enough to her to put his hand on the deceased; that all the deceased was doing was holding her side and groaning, and she did not say anything and did not make any statement as to who stabbed her; that he was helping to hold her up.

Except as above stated, there was no evidence offered by appellant showing what diligence he had used to discover said evidence sooner.

In the light of all the testimony heard by the trial judge and the facts proven on the trial, we are not prepared to hold that the trial court did not correctly hold that proper diligence was not shown or that the trial court was not justified in con-

cluding that the alleged newly discovered evidence was not probably true. In section 198, Branch's Ann. P. C., it is stated: "In addition to setting forth the facts in which the newly discovered testimony consists, the defendant must satisfy the court that the new testimony has come to his knowledge since the trial, and that it was not owing to the want of due diligence that it was not discovered sooner." See Milam v. State, 66 Texas Crim. Rep., 249, 146 S. W., 185; Chappell v. State, 72 Texas Crim. Rep., 192, 161 S. W., 964. We quote the rule from Branch's Ann. P. C., sec. 200, as follows: "Where it clearly appears that the newly discovered testimony is not probably true, either by reason of the facts proven at the trial or by the controverting affidavits on the motion, or otherwise, a new trial sought on that ground is properly denied." See Smith v. State, 164 S. W., 825; Wilkerson v. State (Texas Crim. App.), 57 S. W., 956.

Appellant insists that the evidence is insufficient to support the conviction. We are of the opinion that the testimony offered by the state, if believed, sustains the conviction.

No reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.