Carbett Lee JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 090–85.

Court of Criminal Appeals of Texas, En Banc.

June 4, 1986.

Gary L. Waite, Paris, for appellant.

Tom Wells, Dist. Atty., Paris, Robert Huttash, State's Atty., and Julie B. Pollock, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of delivery of marihuana, and his punishment assessed by the jury at ten years confinement. The only issue at trial was identity. Appellant timely filed a motion for new trial in which he alleged, *inter alia,* "that there is new evidence material to the defense discovered, to wit: A witness whose identity and existence was not known to [appellant] at trial, and who would if located, testify that a person not known to [appellant] committed the offense." See Article 40.03(6), V.A.C.C.P. After a hearing the trial court denied the motion, without elaboration. On appeal appellant asserted as one of his grounds of error that the trial court erred in denying his motion.

In an unpublished opinion the Texarkana Court of Appeals ruled, also without elaboration, that the trial court had not abused

its discretion in denying the motion for new trial. *Jones v. State,* No. 6–83–093–CR, delivered January 16, 1985. We granted appellant's petition for discretionary review to examine this ruling.[1]

■ A motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial court, and its decision should not be disturbed on appeal absent a clear abuse of discretion. E.g., *Eddlemon v. State,* 591 S.W.2d 847 (Tex.Cr.App.1979).[2] The cases are legion which set out what must be shown in order to entitle an accused to a new trial on newly discovered evidence under Article 40.03(6) and its progenitors. See, e.g., *Etter v. State,* 679 S.W.2d 511 (Tex.Cr.App. 1984); *Hernandez v. State,* 507 S.W.2d 209 (Tex.Cr.App.1974); *West v. State,* 2 Tex. App. 209 (1877). First it must be shown that there is in fact new evidence, both competent and material to the case, the existence of which was unknown to appellant at the time of trial. Second it must be shown that appellant's failure to discover such evidence prior to trial, or to utilize the evidence, once discovered, at the time of trial, was not a result of any want of diligence on his part. It has been said that once these have been established, appellant has made a *prima facie* case for the granting of his motion. See *Bolden v. State,* 634 S.W.2d 710 (Tex.Cr.App.1982); *Williams v. State,* 504 S.W.2d 477 (Tex.Cr. App.1974); *Henson v. State,* 150 Tex.Cr.R. 344, 200 S.W.2d 1007 (1946).[3] Neverthe-

---

1. Absent when review was granted, the writer would have voted to refuse for reasons stated in my dissenting opinion in *Jimenez v. State* (Tex. Cr.App., No. 297–83, delivered April 30, 1986).

2. In this context the Court observed, in *Henson v. State,* 150 Tex.Cr.R. 344, 200 S.W.2d 1007, at 1013 (1946):

   "The term 'discretion' or 'judicial discretion', as here used, is incapable of exact definition. Generally speaking, that term comprises two classifications—one, where the court has the absolute and unlimited power to determine a question before him as he pleases; and the other, where the determination is to be made in keeping with that which is just and equitable under all the facts and circum-

stances and subject to review by another court."
As in *Henson,* "[t]he instant case falls within the latter classification."

3. Indeed, in *Henson* the Court effectively held that once the defendant had made this showing, the burden shifted to the State to show that "a different result would *not* probably be reached if the new testimony is produced upon another trial." *Id.,* at 1014. In this the Court relied upon the principle that reasonable doubt should always be resolved in favor of the accused, and cited *Lindley v. State,* 11 Tex.App. 283 (1881). In *Lindley,* the Court of Appeals, quoting from Graham & Waterman on New Trials, pp. 1043–1044, n. 3, had opined:

less, should it appear to the trial court that under the circumstances of the particular case the credibility or weight of the new evidence is not such as would probably bring about a different result upon a new trial, it is within its discretion to deny the motion. Thus it has been said that the new evidence must be "probably true." [4] *Williams v. State*, supra. And although exceptions may be found, as a rule new evidence which is *merely* cumulative, corroborative, collateral or impeaching will rarely be judged by trial or appellate courts to be of such weight as likely to bring about a different result.[5]

> "If it is clear that the new evidence would not change the result, the motion should be denied; but if it be doubtful as to how it would affect the verdict, the motion should be granted. We are aware that a majority of the cases do not go so far as this, but make it incumbent on the moving party to satisfy the court that, if a new trial were granted, the result would probably be different. This, however, is making the court weigh the testimony and pronounce for the jury in advance. And it virtually excludes from the benefits of new trials all cases of doubt. We do not believe that in practice the rule can be carried to the rigid extent we would be led to suppose from the language of the authorities."

*Id.*, at pp. 287–288. Thus it is clear that the impulse behind the *Henson* Court's burden shifting was the notion that the trial court ought not to be the arbiter of the weight of the new evidence. However, even in *Henson* it is conceded that the "probable truth," i.e., credibility, of the new evidence is a question for resolution of the trial court in deciding whether a motion for new trial should be granted. *Williams v. State*, supra, at 482–483. Other decisions have placed the burden squarely on the defendant to show new testimony to be of sufficient credibility *and* weight as to entitle him to a new trial. See, e.g., *Ashworth v. State*, 151 Tex.Cr.R. 83, 205 S.W.2d 788 (1947). In any event, regardless of how the burdens are allocated, it appears firmly established that both weight and credibility of new evidence are proper considerations for the trial court in ruling upon a motion for new trial. See text *post*. Appellant does not now contend otherwise.

4. All this really means is that the whole record presents no good cause to doubt the credibility of the witness whose testimony constitutes new evidence, "either by reason of the facts proven at the trial or by the controverting affidavits on the motion, or otherwise[.]" *Arnold v. State*, 115 Tex.Cr.R. 189, 29 S.W.2d 762 (1930); *Griffin v. State*, 121 Tex.Cr.R. 604, 51 S.W.2d 593 (1932). Thus, new evidence has been found *not* to be "probably true" when, for example: opposed by affidavit of testimony at the hearing showing the new witness was not or could not have been in a position to know the material fact he purports to know, see, e.g., *Smith v. State*, 28 Tex.App. 309, 12 S.W. 1104 (1889); *Lawrence v. State*, 36 Tex.Cr.R. 173, 36 S.W. 90 (1896); *Bothwell v. State*, 120 Tex.Cr.R. 91, 49 S.W.2d 745 (1932); *Hughes v. State*, 121 Tex. Cr.R. 604, 50 S.W.2d 824 (1932); the new witness is impeached at the hearing by a prior inconsistent statement, see, e.g., *Reagan v. State*, 57 Tex.Cr.R. 642, 124 S.W. 685 (1910); *McDowell v. State*, 69 Tex.Cr.App. 512, 258 S.W. 186 (1924); *Tristan v. State*, 123 Tex.Cr.R. 144, 58 S.W.2d 84 (1933); the new evidence contradicts *either* the mass of reliable testimony elicited at trial, see, e.g., *Cole v. State*, 16 Tex.App. 461 (1884); *Mims v. State*, 88 Tex.Cr.R. 419, 227 S.W. 315 (1921); *Trigg v. State*, 99 Tex.Cr.R. 376, 269 S.W. 782 (1924), *or* almost conclusive physical circumstantial evidence developed at trial, see *Trevino v. State*, 38 Tex.Cr.R. 64, 41 S.W. 608 (1897), *or* the defendant's own testimony at trial, see *McFarland v. State*, 147 Tex.Cr.R. 469, 182 S.W.2d 494 (1944); the new testimony is internally inconsistent or otherwise inherently suspect, see *Williams v. State*, supra.

5. Evidence which is "only cumulative" may warrant a new trial if what it is cumulative of is testimony of defense witnesses who constitute interested parties. Thus, in *Spencer v. State*, 69 Tex.Cr.R. 92, 153 S.W. 858 (1913), newly discovered testimony of an exculpatory nature that was cumulative of testimony given by the defendant's brother at trial was deemed sufficient to merit granting of a motion for new trial. Observed the Court:

> "The testimony of a relative of one on trial is seldom given that weight that is given to one wholly disinterested, even though they may be men of equal standing and reputation in the community ... As said in some opinions, the reason for the rule forbidding a new trial for the purpose of admitting cumulative testimony is that public policy, looking to the finality of trials, requires that a defendant be held to diligence in preparing their cases for trial; but this policy, which seeks to limit continued litigation, should never be applied where the newly discovered testimony may be of that cogency and force where it might probably show that an innocent man may probably be caused to suffer for a crime he did not commit. Courts are organized, and the object of the law is that the true facts may be arrived at and justice administered; and where the evidence is about upon an equipoise as to whether a man committed an offense or not, if there is really newly discovered testimony coming from a credible source, this rule will be held in subordination to the great end to

The court of appeals simply concluded, without analysis, that the trial court did not abuse its discretion in failing to grant appellant's motion for new trial. It is therefore left to this Court to determine in what respect, if any, appellant fell short in establishing his right to a new trial. To this end we turn to a recitation of the evidence as elicited at trial and at the hearing on the motion for new trial.

The State's entire case rested upon the testimony of David Beasley, an investigator for the Narcotics Service of the Texas Department of Public Safety. Beasley testified that on July 2, 1982 at about 8 o'clock p.m., he was approached by a man he had never seen before but whom he unequivocally identified as appellant at the Western Club in Paris. Appellant asked Beasley if he would be "interested in some reefer to smoke." When Beasley replied that he "probably would" (sic), appellant offered to allow him to inspect the merchandise. The two then proceeded to the parking lot where appellant opened the trunk of his car to reveal a small box containing "probably fifteen bags of marijuana." Appellant told Beasley these were "$25.00 bags" and invited him to take his pick. Beasley selected two bags, paid appellant $50.00 in cash, and the two then went back inside the club, sat down with drinks, "and discussed future business." Though at this time appellant wrote his name and a telephone number on a napkin for Beasley, the napkin was subsequently lost. Sometime between 8:20 and 8:40 Beasley went back out into the parking lot to record the license number of the car from which appellant had sold him the marihuana. This car proved later to be registered in the name of appellant's wife.

Appellant was not arrested for this offense until May 6, 1983, over ten months after the sale. Beasley testified that to have arrested appellant earlier would have compromised his ongoing investigation in the area.

On crossexamination Beasley revealed that at approximately 9:30 p.m. on the same night he had purchased the marihuana from appellant, he also bought some pills from a woman who represented them to be percodan. This sale took place in appellant's car and in appellant's presence. With the aid of a Paris police officer, Beasley later identified the woman, "by a college photo," as Tina Louise Cox. The pills turned out to be fake. Subsequently Cox moved from Paris, and Beasley did not have her present address.

On recrossexamination Beasley stated he was sure the name that had been written on the napkin was appellant's.

Defensive testimony showed that at the time of the offense appellant was living with his wife in a small house behind the home of his aunt. Appellant, his wife and his aunt all testified that appellant spent the evening of July 2, 1982, with relatives at his aunt's house. The occasion was memorable in that his aunt barbequed an armadillo his father had run over the day before. Appellant and his wife maintained that they had lent their car to appellant's cousin, Jerry Don Perry, on that day. Perry himself testified he left the house in appellant's car to go to the Western Club at nine o'clock in the morning on July 2nd, returned home around noon, and left again at seven p.m. to drive to Bogata to visit his girlfriend. He arrived home at about eleven p.m.[6]

---

be obtained—that is, meting out justice to each individual citizen."
*Id.*, at 860.

Testimony that not only impeaches, but also shows a witness to have been mistaken upon a material matter in the case will, if credible and newly discovered in spite of due diligence, call for the granting of a motion for new trial. *Barrett v. State*, 98 Tex.Cr.R. 627, 267 S.W. 511 (1925).

6. Beasley testified the car from which appellant sold him the marihuana had been a "brown or copper colored" 1970 Chevrolet Malibu two door, license plate number FXS 986, registered, as noted *ante*, to appellant's wife. On crossexamination appellant's wife admitted her car was a 1970 Chevrolet, and then affirmatively answered the prosecutor's leading question whether the license number was "XS 1897." Appellant also admitted on crossexamination that he had made payments on a 1970 Chevrolet Malibu

It was established that Tina Cox was a waitress at the Western Club at the time of the offense, but appellant denied knowing her well.

In his motion for rehearing after trial appellant alleged that Cox' testimony represented new evidence in that she would "testify that a person not known to [appellant] committed the offense." In his petition for discretionary review he asserts that her testimony would "tend[ ] to establish that [he] was not at the club on the night in question." However, these claims are not substantiated by the testimony elicited at the hearing on the motion.

Cox testified at the hearing that she had been a waitress at the Western Club in July of 1982, but had moved to Dallas in November of that year without leaving a forwarding address. She knew appellant, but "[n]ot too well," having seen him only "four of five times" in the club. She denied having been present when appellant was said to have sold marihuana to Beasley, and having later sat in appellant's car and sold percodan to him or to Beasley. In fact, it is doubtful from her testimony that she was present at the club at all that night. Ultimately she testified as follows:

"Q. Is it your testimony today that he was mistaken, that David Beasley was mistaken as to your identification and [appellant's] identification on the evening in question?

A. Yes, sir."

Clearly evidence of misidentification of appellant by Beasley would support appellant's theory of alibi, since alibi and misidentification are "two sides of the same coin." *Butler v. State*, (Tex.Cr.App., No. 741–84, delivered March 19, 1986). Thus, if Cox' testimony could reasonably be read to constitute evidence of Beasley's misidentification of appellant, and if it were credible, we would be constrained to hold that the trial court erred in denying the motion for new trial.

However, in spite of her assertion to the contrary, Cox cannot positively establish that "a person not known to [appellant]" actually sold the marihuana to Beasley. Having testified that she herself was not present with appellant or Beasley at any time on the night of the transaction, she cannot also consistently maintain that appellant was not at the Western Club and could not have sold Beasley the contraband. She has necessarily placed herself in a position of ignorance as to their whereabouts, and hence cannot testify, as she claimed at the hearing, that Beasley was mistaken in his identification of *appellant.* In fact, all she can and did establish at the hearing, assuming her testimony was credible, is that Beasley was mistaken in identifying her as the woman who later sold him ersatz percodan. Thus her only contribution to a new trial would be to *impeach* the reliability of Beasley's identification of appellant, by demonstrating he was mistaken in identifying her; she could not *contradict* Beasley's identification of appellant.

Moreover, we could not fault the trial court had it found Cox' testimony to be inherently unbelievable. Admitting that she had sold what was purported to be a controlled substance would have been tantamount to confessing her guilt in the commission of a class A misdemeanor. See V.A.C.S. Art. 4476–15, Sections 4.09(a)(6) and (b)(4), and 1.02(5). Thus, she had a motive to deny any transaction with Beasley.

Appellant points to the ten month delay between the offense and his arrest and the lost napkin as indicia of error in Beasley's identification of appellant. He appears to argue that in combination with this evidence of the unreliability of Beasley's testimony, his new evidence would probably change the result upon a new trial. He asserts that his motion for new trial should have been granted by authority of *Carlisle*

registered in his wife's name, but could not say whether the license number was "XS 896." Perry identified appellant's car simply as a maroon Chevrolet. Thus, whether or not the result of

stenographic error, there was no evidence to corroborate Beasley's assertion that the Chevrolet Malibu he bought the marihuana out of belonged to appellant's wife.

*v. State,* 549 S.W.2d 698 (Tex.Cr.App.1977). We disagree.

In *Carlisle* the defendant's ex-wife was found murdered in a vacant lot in the front seat of his car. Witnesses placed the defendant in a phone booth near the scene close to the time the body was discovered, and circumstantial physical evidence pointed to defendant's culpability. The defendant took the stand, however, and denied perpetrating the killing, telling an almost incredible story. According to the defendant, he and his ex-wife had reconciled and decided to remarry the night before the killing occurred. On their way to carry out this intention they stopped to pick up a hitchhiker. Minutes later the hitchhiker pulled a gun and ordered the defendant to ingest a number of valiums and some alcohol. The drugs took effect and the defendant's memory of what transpired thereafter was hazy, but when he came to his senses, he found himself on the floor of the car amidst loud noises. He could hear his ex-wife crying for help, but as he struggled out of the car and grabbed at someone he was struck over the head.

Adding to the incredibility of the defendant's story was the lack of any evidence of a motive the claimed hitchhiker may have had to kill. Hundreds of dollars were recovered at the scene, thus ruling out robbery.

At the hearing on motion for new trial the defendant produced a theretofore unknown witness who had been rounding up stray cattle on the highway in the early morning hours before the killing. He testified that he saw what he knew to be the defendant's car pull up and wait for the cattle to be cleared from the road. Inside the car he recognized the defendant's ex-wife driving, and a stranger on the passenger side. He spoke with the soon-to-be deceased, who told him the defendant was passed out in the back seat, where indeed the witness could see someone lying down.

The State argued that the testimony of the new witness was merely cumulative of the defendant's own testimony that a third party was present in the car before the killing, and thus did not call for a new trial. Rejecting this, the Court held that the new testimony lent some credence to what was otherwise an inherently incredible account, and "would certainly have affected [the jury's] deliberations and might possibly have resulted in a different verdict," *id.*, at 705, especially in view of the fact that the circumstantial evidence, while incriminating, was hardly conclusive. Apparently the Court found the new evidence at least creditable, if not "probably true." See n. 4, *ante.* In effect the Court ruled that under the circumstances the new evidence, if believed by the jury, would have injected reasonable doubt into the case.

By contrast, the testimony of Cox in the instant cause, even granting it credibility, was not of such weight as necessarily to inject into the case reasonable doubt as to Beasley's identification of appellant, which was positive and unequivocal. Even if the jury believed Beasley erred in his identification of Cox, it would not necessarily find therefrom that he had mistakenly identified appellant as well. That Cox' testimony is of at least questionable credibility makes it even less likely that a different result would be reached upon a new trial.

■ Assuming then, without deciding, that appellant has made the requisite showing of due diligence, we hold that the new evidence posited by appellant in this cause, being of impeachment value only, and of at least questionable credibility, was not such as would probably change the result in any respect upon a new trial. Under the circumstances we conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial.

The judgment of the court of appeals is affirmed.

TEAGUE and MILLER, JJ., dissent.

ONION, Presiding Judge, concurring.

I concur in the result. The majority notes the trial court overruled the motion for new trial "without elaboration." Article 40.07, V.A.C.C.P., provides:

"In granting or refusing a new trial, the judge shall not sum up, discuss or comment upon the evidence in the case, but shall simply grant or refuse the motion, without prejudice to either party."

The trial court correctly overruled the motion "without elaboration."