McCartney v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00425-CR


NO. 03-93-00426-CR







James Wesley McCartney, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT


NOS. CR92-0532-A & CR92-0533-A, HONORABLE DICK ALCALA, JUDGE PRESIDING








 Appellant James Wesley McCartney was convicted of aggravated kidnapping and
capital murder and sentenced to life imprisonment for each offense. Appellant contends on appeal
that: (1) there was insufficient evidence to corroborate the testimony of the accomplices as to the
aggravated kidnapping offense; (2) the trial court abused its discretion both in submitting the
capital murder charge and in failing to submit a charge on murder as a lesser included offense;
and (3) the trial court abused its discretion in failing to grant a new trial based on newly
discovered evidence. We will affirm the convictions.


FACTUAL AND PROCEDURAL BACKGROUND


 On July 4, 1992, the San Angelo police arrested appellant for the aggravated
kidnapping and capital murder of Jose Rubio. Rubio's body had been found in an abandoned
freezer at the San Angelo city dump. His death was the result of over ninety stab wounds to his
head, neck, chest, and back. At trial, appellant's two juvenile accomplices, Tommy Yell and
Jeremy Saldana, testified to the events surrounding Rubio's murder.

 On the afternoon of June 30, 1992, appellant, Yell, and Saldana went to a park in
San Angelo for the express purpose of finding someone to rob. Appellant sat on a curb while the
two juveniles waited on a park bench until appellant selected a victim. Rubio drove by appellant
and stopped. After some discussion, Rubio agreed to give the trio a ride to appellant's home. 
After giving Rubio false directions to his house, appellant pulled his pocket knife and placed it
against Rubio's throat. Appellant told Rubio he would not hurt him. He then pulled Rubio out
of the driver's seat; Yell drove the group to a secluded area near a lake. There appellant removed
Rubio from the car and made him lie on the ground. Appellant and Saldana searched Rubio and
took from him twenty dollars, his Gucci watch, his tennis shoes, and two gold necklaces. 
Appellant then took Rubio farther away from the car. After once again assuring Rubio that he
was not going to hurt him, appellant stabbed him repeatedly in the back of the neck and head. 
He then turned the victim over, slit his throat, and continued stabbing him in the chest. At one
point appellant exclaimed, "There's something wrong, he ain't dying." After his assault on
Rubio, appellant gave the knife to Yell and told him it was his turn to stab the victim; Yell
complied. Appellant then told Saldana it was his turn; Saldana, however, refused. The trio then
fled the crime scene in Rubio's car, leaving the body in the woods.

 Following the kidnapping and murder, the three went to a convenience store to buy
cigarettes with the twenty dollars they had stolen from Rubio. While in the store, Yell procured
a wet towel that they used to wipe off the victim's blood. They then drove to several automated
teller machines in a vain attempt to retrieve money using an MPACT card they had found in
Rubio's wallet. Appellant and Saldana then dropped Yell off near his girlfriend's house. 

 Concerned that Yell might say something about the crime, appellant and Saldana
decided to move the body. They returned to the lake, threw the body in the trunk of Rubio's car,
and drove to the dump. There they stuffed Rubio's body in an abandoned freezer. They then
went to a convenience store, where appellant purchased a gallon of gasoline. After the purchase,
they drove the car to a deserted area and set it on fire.

 Four days later, appellant was arrested for the aggravated kidnapping and capital
murder of Rubio. Appellant was convicted by a jury on both counts and received a life sentence
for each offense. Appellant now appeals, contending that: (1) there was insufficient corroboration
evidence to support the aggravated kidnapping conviction; (2) the trial court abused its discretion
both in submitting the capital-murder charge and in failing to submit murder as a lesser included
offense; and (3) the trial court abused its discretion in failing to grant a new trial based on newly
discovered evidence.


DISCUSSION


A.  Corroboration of Accomplice Testimony

 In his second point of error, appellant contends there is insufficient evidence to
corroborate the accomplice testimony of Yell and Saldana as to the aggravated kidnapping offense. 
Significantly, appellant does not challenge the sufficiency of the corroboration as to the capital-murder offense. Rather, he limits his appeal solely to corroboration of the kidnapping offense.

 The Code of Criminal Procedure provides that "[a] conviction cannot be had upon
the testimony of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed." Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). 
Under the accomplice-witness rule, it is not necessary for the non-accomplice evidence to be
sufficient in itself to establish the accused's guilt beyond a reasonable doubt. Gill v. State, 873
S.W.2d 45, 48 (Tex. Crim. App. 1994). Nor is it required that the non-accomplice evidence
directly link the accused to the crime. Id.; Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim. App.
1988). "All that is required is that there be some non-accomplice evidence which tends to connect
the accused to the commission of the offense alleged in the indictment." Gill, 873 S.W.2d at 48
(emphasis in original). The phrase "tends to connect" has the ordinary dictionary definition: "to
serve, contribute or conduce in some degree or way . . . to have a more or less direct bearing or
effect." Holladay v. State, 709 S.W.2d 194, 198 (Tex. Crim. App. 1986) (quoting Boone v.
State, 235 S.W. 580, 584 (Tex. Crim. App. 1922)). There is no precise rule as to the amount
of evidence that is required to corroborate the testimony of an accomplice; each case must be
judged on its own facts. Gill, 873 S.W.2d at 48. The rule simply reflects a legislative
determination that accomplice testimony should be viewed with some level of caution. Id. 

 We conclude there is ample evidence tending to connect appellant to the criminal
episode in general and, accordingly, to the kidnapping offense. When appellant was arrested he
was in possession of an "Old Timer" pocket knife. (1) The medical examiner testified that the knife
was consistent with the instrument used in Rubio's murder. Further forensic evidence revealed
that appellant's knife had human blood on it that was consistent with Rubio's blood. Thus, the
knife alone is sufficient evidence tending to link appellant to Rubio's kidnapping and murder.

 In addition, much physical and testimonial evidence corroborates the accomplices'
testimony concerning this entire criminal episode. When appellant was arrested he was wearing
two gold necklaces that were identified by Rubio's family as belonging to the victim. Both
Rubio's body and the burned automobile were found in the locations where the accomplices
testified they would be. When the accomplices took the police to the crime scene, they recovered
rock and grass samples that contained blood determined by forensics experts to be consistent with
Rubio's. The towel appellant used to clean off the blood, as well as appellant's shirt and shorts
worn the day of the murder, were introduced in evidence; forensic testimony indicated that each
contained human blood. The clerk from the convenience store testified that appellant purchased
gasoline from him on the night of the murder. He also made an in-court identification of
appellant. In sum, this evidence, which directly links appellant to the capital murder, also tends
to connect appellant with the kidnapping offense that preceded it. The two offenses are
sufficiently interconnected as to obviate any need to have "separate" corroboration for each
offense. Under the circumstances of the present case, the evidence that tends to connect appellant
with the murder also tends to connect him with the kidnapping, and vice versa. Point of error two
is overruled.




B. Capital Murder and Lesser Included Offense

 Appellant's third point of error asserts that the trial court abused its discretion by
submitting the capital-murder charge to the jury because there was no evidence that the murder
was committed in the course of a robbery. In his fourth point of error, appellant argues that the
trial court erred by not charging the jury on the offense of murder as a lesser included offense. 
Both of these points of error hinge on appellant's assertion that the robbery was already completed
by the time the murder occurred.

 A person is guilty of capital murder if the person intentionally commits a murder
in the course of committing or attempting to commit a robbery. Tex. Penal Code Ann.
§ 19.03(a)(2) (West 1994). (2) "`In the course of committing theft' means conduct that occurs in
an attempt to commit, during the commission, or in immediate flight after the attempt or
commission of theft." Penal Code § 29.01(1). The evidence at trial reflects that appellant planned
to commit a robbery. Immediately after taking the victim's money, shoes, and jewelry, appellant
viciously murdered Rubio. Appellant then fled in Rubio's car and attempted to use his bank card. 
This evidence is sufficient to show that the murder was committed in the course of a robbery. See
White v. State, 779 S.W.2d 809, 815 (Tex. Crim. App. 1989), cert. denied, 495 U.S. 962 (1990);
Cannon v. State, 691 S.W.2d 664, 675 (Tex. Crim. App. 1985), cert. denied, 474 U.S. 1110
(1986). Because a rational trier of fact could have found defendant guilty of capital murder, the
trial court did not abuse its discretion in submitting the capital-murder charge. Appellant's third
point of error is overruled.

 Appellant also argues that the court abused its discretion by failing to submit a
murder charge as a lesser included offense. Appellant is entitled to a charge of a lesser included
offense if there is some evidence in the record that if the defendant is guilty, he is guilty of only
the lesser offense. Thomas v. State, 701 S.W.2d 653, 656 (Tex. Crim. App. 1985). Appellant
contends he was entitled to the murder charge because Saldana testified that he believed the
robbery was over when appellant murdered Rubio; appellant argues that this testimony constitutes
"some evidence" requiring the lesser offense instruction. We disagree.

 The Penal Code prescribes the elements of capital murder and robbery. Appellant
could be entitled to a murder charge as a lesser included offense if the murder did not take place
in the course of committing a robbery. See Penal Code § 19.03(a)(2). The Code specifically
defines "in the course of committing" a robbery as "in an attempt to commit, during the
commission, or in immediate flight after the attempt or commission of theft." Penal Code
§ 29.01(1). The Code, therefore, defines the offense of robbery to include acts both during and
in immediate flight from the theft. While Saldana did state on cross-examination that he believed
the robbery was over before the murder, he also testified that they planned to rob someone, take
the car, and leave the person at the lake. Saldana's statement that he "believed" the robbery was
complete before the murder was committed has no bearing on our determination of the legal
question of whether the murder took place "in the course of committing" the robbery, because as
a matter of law a robbery includes acts performed in immediate flight after the offense. Saldana's
lay impression of when the robbery was "over" does not contradict his other testimony as to facts
showing conclusively that Rubio's murder took place during or in immediate flight after the
commission of the robbery. Likewise, Saldana's impression of when the offense was over is no
evidence of appellant's intent. This is especially true given that Saldana himself testified he did
not know that appellant intended to kill Rubio until he actually began the assault. Thus, under
these circumstances Saldana's testimony does not rise to the level of "some evidence" that, if
guilty at all, defendant is guilty only of the lesser offense of murder. Therefore, the trial court
did not abuse its discretion in failing to submit a murder charge as a lesser included offense. 
Point of error four is overruled.



C. Motion for New Trial

 Appellant's first point error alleges that the trial court abused its discretion by
failing to grant a new trial because the record showed the existence of newly discovered evidence. 
To obtain a new trial based on newly discovered evidence, the movant must prove that the
materiality of the undiscovered evidence is such as would probably bring about a different result
at trial, and he must also show that the evidence is not merely cumulative, corroborative,
collateral, or impeaching. Drew v. State, 743 S.W.2d 207, 226 (Tex. Crim. App. 1987). The
abuse-of-discretion standard controls our review on appeal. Jones v. State, 711 S.W.2d 35, 36
(Tex. Crim. App. 1986).

 In the hearing on the motion for new trial, appellant presented only one witness,
convicted felon Danny Duffy. Duffy testified that at some point in the summer of 1992, Tommy
Yell had asked him to go to the same San Angelo park to rob someone. Duffy, himself
incarcerated with appellant in the same cell block in the San Angelo jail, also testified that he did
not like Yell. The State presented evidence of Duffy's multiple felony and misdemeanor
convictions. Likewise, the State presented four witnesses who testified that Duffy was not truthful
and that Duffy's reputation for veracity was poor.

 Given this evidence, the trial court did not abuse its discretion in denying the
motion for new trial. The trial court was in a superior position to determine the truthfulness of
Duffy's statements and the weight to be given them; this Court will not second-guess the
factfinder under these circumstances. See Eddlemon v. State, 591 S.W.2d 847, 850 (Tex. Crim.
App. 1979). Furthermore, even if we assume Duffy's comments were true, they do not present
a material issue as to appellant's guilt. Point of error one is overruled.


CONCLUSION


 The judgments of conviction are affirmed.


 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed on Both Causes

Filed: August 30, 1995

Do Not Publish
1. [1]  This knife was identified by the accomplices as the kidnapping and murder weapon.
2. [2]  This offense took place before September 1, 1994 and is governed by the law in effect at
the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex.
Gen. Laws 3586, 3705. Because the code amendments effective September 1, 1994 have no
substantive effect on the portions of the code relevant to this cause, we cite the current code
for the sake of convenience.