# H. P. MORGAN V. THE STATE.

Nos. 20154 and 20202.   Delivered October 12, 1938.
On The Merits March 1, 1939.

The opinion states the case.

*Lindsey & Vaughan* and *O. H. Woodrow,* all of Sherman, for appellant.

*R. C. Slagel, Jr.,* Cr. Dist. Atty., and *William Ralph Elliott,* Asst. Cr. Dist. Atty., both of Sherman, and *Lloyd W. Davidson,* States's Attorney, of Austin, for the State.

GRAVES, JUDGE.—Conviction is for assault to rape, punishment, ninety years confinement in the penitentiary.

The transcript fails to show that any sentence was ever pronounced against appellant. Art. 769, C. C. P. provides that in all felony cases, save where the death penalty has been assessed, sentence shall be pronounced "before the appeal is taken." In such cases it has always been held that sentence was prerequisite to appeal, and that, in the absence of a sentence, this court is without jurisdiction. Nichols v. State, 123 Texas Crim. Rep. 448, 59 S. W. (2d) 388.

The appeal is dismissed.

(No. 20202)
ON THE MERITS.

CHRISTIAN, JUDGE.—The offense ·is assault with intent to rape; the punishment, confinement in the penitentiary for ninety years.

This cause was heretofore numbered 20,154 on the docket of this court. Upon the first submission it appeared that sentence had not been pronounced upon appellant by the court below. Hence we dismissed the appeal. Thereafter the trial judge called a special term of court and duly sentenced the appellant. The appeal from the judgment of conviction has now been regularly perfected.

Prosecutrix, Fay Morgan, is the daughter of the appellant, who lived on a farm with prosecutrix and her two sisters. The girls aided the appellant in chopping cotton and hoeing corn, it being their custom to work in the field with him. According to the testimony of prosecutrix, her relations with appellant had not been pleasant, as he had kept her from keeping company with certain boys who drank intoxicating liquor. Also, she persisted in smoking cigarettes, notwithstanding appellant's objection. Prosecutrix testified that the assault occurred in the field on the 23rd of May, 1938. We quote from her testimony, as follows: "He (appellant) was on top of me at the time he did that; and then he went up and down on me. He had his private parts out of his trousers at that time, and he put his private parts up against me. His stomach touched my body. He did not try to force his private parts in me. He had it out of his trousers and he went up and down on me. * * * I told him to get up and he got up. I found some stains on my clothing when he got up. * * * When he got up he said if I ever told on him he would kill me."

It is observed that the above-quoted testimony would not have sustained a conviction for assault with intent to rape, notwithstanding prosecutrix was sixteen years of age. In short, such statement excluded the idea that appellant had the present intention of committing the offense. of rape. With her testimony in this condition prosecutrix left the witness stand, but was later recalled by the state. She then testified as follows: "When I testified in here a while ago I had never even been in a courthouse before, and that was the first time I had ever testified from the witness stand. I was afraid. I was afraid and was

afraid of my father and I am afraid of him now. I testified a while ago that my father got on top of me down here by the wood pile and testified that he got his penis out. It was hard at that time he got on top of me. He tried to put it inside of me at that time. When I testified a few minutes ago I testified that he did not attempt to put his penis in me but I did not understand the question. I talked to one of the district attorneys since I left the court room, since I testified. I talked to Mr. Elliott, and he asked me if I clearly understood the question."

In support of the theory that appellant assaulted his daughter with intent to rape her, the state relied upon the testimony of prosecutrix we have heretofore quoted and the further testimony of her sister to the effect that she left the appellant and prosecutrix alone in the field on the occasion in question. Also, there was proof to the effect that the officers had some difficulty in locating appellant after they had taken his daughters, under a subpoena, to the courthouse. Appellant being aware that his daughters had been called upon to testify, it was the theory of the state that a sense of guilt impelled him to attempt to evade arrest.

Appellant took the stand and denied that he was guilty. He charged prosecutrix with having given false testimony against him because he had refused to permit her to associate with certain drunken boys in the community.

In his motion for new trial appellant alleged that prosecutrix had repudiated the testimony she gave upon the trial. In support of the motion her affidavit was attached thereto, from which we quote, as follows:

"The facts that are to follow are true and correct, and I was not asked by any individual to make this statement, but wish to do so of my own free will and accord. When I testified at my father's trial I was frightened and scared and hardly remember at this time the things that I told the jury. I was never talked to or questioned before the trial by my father's lawyer. I have never been in a courtroom before in my life and I wouldn't have given the testimony that I gave if Mr. Slagle had not carried me into another room at the trial and talked to me. I do not know of any particular thing that he said that scared me, but I was afraid that if I didn't tell that my father had attacked me that I would have been punished, and I wish to state now that anything that I said about my father making an assault on me is not true, and that he has never in my life made an assault upon my person. During the past two or three years my father has never let me or my sisters go to dances,

and has been very strict on us and has kept us at home. He has abused me in every way that I know, and when I went before the grand jury about this case I was mad at my father and I believe I would have told anything to get him punished for being so mean to us kids. I don't know exactly what I said before those men, but I do know that it was something about my father having made an attack upon me. I am now telling the truth and I want to tell the truth regardless of how I may be punished; but it is the truth that my father has never attacked me, and as far as I know, has never wanted to have any sexual relations with me. I swear that what I have just put in writing is true and I have carefully read each and every word."

Upon the hearing of the motion appellant introduced the foregoing affidavit and called prosecutrix to the stand. Instead of affirming that the statements embraced in the affidavit were true, she testified, in effect, that her father's brother asked her to accompany him to Whitesboro and make a statment concerning the testimony she gave on the trial. She said: 'He did not say what kind of a statement, and he did not say what kind of a statement I had signed after I left. I read the statement myself after it was signed. * * * My uncle kept the statement after I signed it." Further, she maintained that she did not tell her uncle to embrace in the affidavit the statement that appellant had not assaulted her. She testified: "They told me that if I would sign that statement it would get my father's time cut down in the penitentiary. I thought ninety years was too much. That is the reason I signed the statement because I thought that ninety years was too much. My uncle said he did not know for sure, but he thought it would be reduced if I signed it, if I signed that statement. The testimony that I gave here in the trial of this case, under oath, in this courtroom court was true."

It appears that prosecutrix was taken before the grand jury after she made the affidavit hereinbefore set forth and before she gave her testimony on the hearing of the motion for new trial. When she was testifying on the hearing of the motion she was asked if she had stated that she had been told that if she did not adhere to the testimony given upon the trial she would be sent to the penitentiary. She denied making such statement. Thereafter the appellant called the aunt of prosecutrix, who testified that prosecutrix made the following statement to her: "They told me that if I didn't go down there and tell the same story that I told on the other trial they would send me to the penitentiary instead of my father." The

notary public taking the affidavit of prosecutrix testified as follows: "It (the affidavit) was read to her twice. She read it herself once and I read over it, and swore her to every fact in it. Read it over and asked her if she would swear of course, to each one of those, I repeated it and asked her when I took her oath to each statement."

Prosecutrix testified that the grand jury said nothing to her which would have caused her to change her statement. She said, however, that if a new trial should be granted it was not her purpose to return to her father's home.

It is observed that prosecutrix testified positively in the first instance that appellant committed no act upon which the conviction could be had; that upon being recalled to the stand, she gave testimony inculpating the appellant; that after the trial she made an affidavit retracting such testimony; that after being brought before the grand jury she stated that the facts she swore to in her affidavit were false, and that her testimony given at the time she was recalled to the witness stand during the trial of the case was true. Under the circumstances, we are of the opinion that a new trial should be granted to enable appellant to place before another jury the affidavit of prosecutrix retracting the inculpatory testimony she had theretofore given against the appellant. In Spencer v. State, 153 S. W. 858, we said: "While the interests of society require that those who violate the law shall be punished and restrained, yet the state desires no innocent man to suffer, and a greater crime is committed against society when a person, guilty of no offense, is wrongfully made to wear prison stripes than when one guilty is permitted to escape." If another jury should have before them the affidavit in question and the various contradictory statements of prosecutrix it is not improbable that appellant would be acquitted. It follows that we are constrained to order a reversal of the judgment.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.