## WALTER TIROFF V. STATE

No. 28,615. November 21, 1956.
Appellant's Motion for Rehearing Overruled.
(Without Written Opinion) January 30, 1957.

*Byron Matthews, Ronald Aultman* and *Randell C. Riley,* Fort Worth, for appellant.

*Howard M. Fender,* Criminal District Attorney, *Conard Florence* and *Hugh F. King,* Assistants Criminal District Attorney, Fort Worth, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is rape; the punishment, 10 years.

This opinion will be lengthy because it must cover two statements of fact of equal length, one on the original trial and the other on the motion for new trial. The sole question presented for review is the refusal of the trial court to grant a new trial on the grounds that an inculpatory witness made an affidavit following the original trial which contained a statement contradictory to her testimony upon the trial.

### ON THE ORIGINAL TRIAL

The prosecutrix, a 26-year-old married woman and the mother of 2 children, in company with her neighbor Mrs. French, aged 42 and the mother of 4, went to a local tavern on the night in question. Prosecutrix' husband had gone fishing, and Mrs. French was separated from her husband at the time. Prosecutrix had six dollars which her husband had given her when he left, and Mrs. French had no money. At the tavern, they met two men, one of them was a friend of prosecutrix' brother. Mrs. French suggested that the four of them go to

another tavern in another part of the city of Fort Worth. The two men seem to have dropped out of the picture at the third tavern, and the women began to take account of the time. At eleven o'clock they started to make movements toward going home to their children. From this point forward, the testimony conflicts. Prosecutrix and Mrs. French testified that they had each consumed only two bottles of beer and were not under the influence of intoxicants.

Prosecutrix testified that they did not know the young man who offered to carry them home and at first demurred, but finally consented when he promised to carry them directly there. Upon arriving at his automobile they found another young man, named Rainwater, seated in the back seat, and they demurred again. Finally, one of the women got in the front seat, and the other got in the back; and they proceeded for a distance until they reached a park. The young men told the women that this was a short cut home. The prosecutrix asked to be excused so that she might relieve herself, and the automobile was brought to a halt. She went some distance from it, and as she got in a position to relieve herself one of the young men jumped upon her from the rear; and at the same moment she heard Mrs. French scream. At this moment, a large group of young men, one of whom was the appellant, appeared upon the scene unannounced, and the older of them, who appeared to be the ring leader, ordered the others to throw the prosecutrix into the back seat of still another automobile which was parked nearby but which prosecutrix had not seen. Following this, a great number of young men (she could only approximate the number) ravished her and, in the course of their attack, beat her about the face and forced her to commit acts of sodomy upon them. The appellant had intercourse with the prosecutrix against her will and over her utmost resistance and assisted in holding her prisoner for a greater portion of the night. After prosecutrix had been ravished a number of times, eight of the assailants, including the appellant, left the scene of the first attack in one automobile with the prosecutrix as their prisoner, leaving the automobile which contained Mrs. French behind, and moved their operations to another city park, where the ravishing continued and where her money and her watch were taken from her. Sometime later that night, one of the assaulters took the prosecutrix some distance from the automobile and with judo licks knocked her unconscious. She regained consciousness at approximately four-thirty in the morning and made her way some distance to a farm house, where she secured aid and the police were called. Prosecutrix and Mrs. French met again at

the police station, and both gave statements to representatives of the district attorney's office and identified the appellant and other of their attackers from a lineup.

Shelby Hager of the WBAP newsroom was at the city hall on the morning in question and testified that both women had been "severely beaten." He described their condition as follows: "Both of them were—looked equally as bad, in my opinion. They had black and blue welts all over their faces. They had dried blood caked around their nose and mouth, and I believe the eyes were unusually bloodshot, from some type of blows, I would assume, and the clothes were dissheveled and dirty."

With this, the state rested, and the appellant called Mrs. French. The record does not disclose why this was done because Mrs. French gave practically the same account of the entire transaction as had the prosecutrix except that she had been released by her group of captors at approximately two-thirty in the morning and had immediately called the police.

The appellant then testified. He stated that he was 22 years old, divorced, and living with his parents. He stated that he and a friend were riding around before midnight on the night in question, bought some beer, and went to the park to drink it. Upon arrival at the park, they saw two automobiles which they recognized as belonging to other friends of theirs, one of whom was Rainwater, and engaged them in conversation. He stated that prosecutrix and Mrs. French were intoxicated and were then in the process of freely distributing their sexual favors to one and all, that he joined the group which took the prosecutrix to the second park, and there partook of her generosity to the extent of one act of sexual intercourse. During his direct examination, he made no explanation whatsoever as to how the two women had been beaten. On cross-examination, he stated that one Douglas had "knocked her out" referring to the prosecutrix when the party was over but makes no explanation as to Mrs. French's injuries. He admitted that he had been convicted of highway robbery in the state of Washington in 1951.

This ended the original trial, but more revolting developments lie ahead.

## ON THE MOTION FOR NEW TRIAL

Attached to the motion for new trial was an instrument which we will, for the purpose of stating the facts, refer to as

an "affidavit" of Mrs. French, from which we quote the following pertinent portions:

"Edna and myself had went to a Mansfield Hiway Inn and had drank been and danced with some men. Two of the boys had offered us money for a date and we had said we would go. This was about 11 o'clock the night of April 15, 1955. After we had intercourse with these boys we got up and some other boys came up and we let them have intercourse also. Then there was an argument over how much money we were to get. I guess we all had drank too much beer as I am not sure which boys had intercourse with me, or with Edna.

"Edna and myself picked out some boys that were around us that night and the next day at the police dept. Later when we went to the District Attorney's Office he showed us some statements some of the boys made. With all these things hapending as they did I don't think those boys should be charged with rape or sodomy as we were probably as much to blame as the boys were as to what took place the night of April 15, 1955."

The appellant called his father, who stated that Mrs. French had come to his home after his son's conviction, told him that she needed help, that her husband was in jail, and said that she wanted to help the appellant's father; that they sat down and worked out the "affidavit" in long hand, reduced it to a typewritten page, and then went and had it notarized. He admitted that he had gone to see the prosecutrix before the trial in an effort to get her to drop the charges against the appellant but that prosecutrix' husband had told him to leave their home. He also admitted searching for Mrs. French but stated that he was unable to locate her.

Mr. Biddle, the assistant district attorney in charge of the prosecution, testified that he first interviewed Mrs. French on the morning of the day charged in the indictment and that she had given him substantially the same account of the transaction as had the prosecutrix and substantially as she had testified to at the trial. He testified that Mrs. French had been arrested in Waco the night before the hearing on a writ of attachment and that he had talked to her in the jail upon her return to Fort Worth. He stated that she at that time had told him that appellant's father had come to her home on repeated occasions after the trial trying to get her to give him a statement and, in order to get rid of him, she agreed; that at the time she did not have her glasses, and appellant's father purported to read from the

statement which he had but did not read any of that portion which has been quoted above; that she accompanied him to a notary public, where she signed the same, and appellant's father gave her $200 and she left town. Biddle testified further that Mrs. French had told him the night before that her testimony on the trial had been true and that the contents of the affidavit were untrue.

The prosecutrix testified that her testimony on the original trial had been true; she corroborated Shelby Hager's testimony as to Mrs. French's appearance on the morning following the assault and stated that appellant's father had come to her before the trial and offered to pay her money to drop the case, that she told him to come back later and see her husband, that she promptly called police, and they advised her to detain him when he returned but that when he did come back her husband ran him away from the house.

Mrs. French was called as a witness by the state and re-affirmed completely the statement she had given on the day of the assault and her testimony on the trial. She stated that appellant's father came to her home following the trial and that she repulsed him, that he came back, and that finally she agreed to "sign those papers" because she felt sorry for the father, that she did not have her glasses, and that he read some of the paper but not those portions quoted above. After this, he gave her some "rolled up" bills which she discovered amounted to $200, and that she left for Waco without telling anyone where she was going, and that she had not known the full contents of the affidavit until Mr. Biddle told her about it the night before in jail.

The trial court qualified the bill of exception, which complains of his failure to grant the new trial, by pointing out that the appellant called Mrs. French as a witness on the original trial and by stating that he did not consider the statement after trial by Mrs. French as an affidavit because of the absence of certain formalities in its execution. We have refrained from discussing in this opinion the facts upon which the trial court based this last qualification and do not deem it necessary to do so now.

The most cogent facts which distinguish the case at bar from Morgan v. State, 136 Texas Cr. Rep. 347, 125 S.W. 2d 558, and Schwartz v. State, 141 Texas Cr. Rep. 456, 149 S.W. 2d 96, upon which the appellant relies, are that Mrs. French was

appellant's witness and the indisputable presence of the two "severely beaten" women at the police station the next morning.

The appellant in his testimony makes only a passing mention of how one of them sustained these injuries and the so-called affidavit of Mrs. French says only, "Then there was an argument over how much money we were to get," and nothing more.

The theory of the law under a situation comparable to that before us is that another jury should be allowed to hear the additional evidence adduced upon the motion for new trial if there is a probability that after having heard it they would render a different verdict or inflict lesser punishment than the original jury.

We fail to see how such theory would find application here. As we see it, a jury which heard of the appellant's father's effort to thwart the orderly processes of justice would be inclined to inflict a more severe punishment, and this itself would be unjust because the appellant himself was not shown to be a party to this revolting business.

Our form of government is predicated upon the hypothesis that all its citizens will tell the truth when under oath, both in and out of court, and all law-abiding citizens become nauseated at any effort to prostitute the sanctity of that oath.

The judgment is affirmed.