**Arthur Roy AUTRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–86–046–CR.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 16, 1986.

Rehearing Denied Nov. 13, 1986.

John Peterson, Beeville, for appellant.

C.F. Moore, Dist. Atty., Beeville, for appellee.

Before DORSEY, UTTER and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a conviction for the aggravated sexual assault in which C____ A____ was the victim. The jury assessed punishment at 22 years in the Texas Department of Corrections and a $5,000.00 fine. Two grounds of error are raised: (1) that the pre-trial photographic identification procedure was impermissibly suggestive, and (2) that the trial judge abused his discretion in failing to grant a new trial based on newly discovered evidence. The identification of the appellant as the assailant is the thrust of both grounds of error. A detailed recitation of the evidence is therefore necessary.

The first witness was C____ A____, a 23–year-old housewife who recently moved to Beeville, Texas, with her husband, a student pilot at Chase Field Naval Air Station near Beeville. C____ A____'s husband had a 24–hour duty period at the air station beginning 7:00 a.m. on Saturday, June 29, 1985. As C____ A____ had not been apart from her husband overnight since their recent marriage, she called a woman friend, J____ D____, in Corpus

Christi to spend the night with her. Two other friends, who were student pilots in the Navy along with C____A____'s husband, arrived at C____A____'s house later that evening. The four spent the evening at C____A____'s house talking, playing guitars, and drinking until 3:00 in the morning, when the two student aviators left.

After C____A____ and J____D____ saw their friends to their car, they walked around the block and returned to C____A____'s house. In the bedroom used by C____A____ and her husband, there was an exterior doorway which was closed by a screen door and a wooden door. That doorway had not been used as an entranceway by C____A____ or her husband and the screen door remained locked. However, the wooden door was opened in the evening in order to provide a breeze through the bedroom. Earlier that evening, C____A____ had shown J____D____ a .357 magnum revolver that she and her husband had purchased the prior day. The pistol was loaded and was kept in its original box under the bed.

Sometime after the women went to bed, an intruder burst into the bedroom with a pistol in his hand telling the two women not to reach for the pistol because he had it. The intruder turned on the bright light in the bedroom but quickly turned it off and told C____A____ to turn on the bedside lamp. The intruder was wearing red shorts, a red T-shirt, and had a red bandana covering his face from his nose downward. He ordered C____A____ out of bed and raped her from behind while she was standing. The revolver rested between her shoulders during the act. The assailant ordered J____D____ several times to turn away from him and not to look at him, so she turned away from him and put her head under the covers. After he had finished his assault on C____A____, he had her kneel by the bed and put her head down with the instruction not to look at him while he assaulted J____D____. The women estimated that the assault lasted approximately 45 minutes or an hour and the assailant at all

times had the pistol pointed at one of them, and he generally carried the pistol in his left hand. His hair was described by C____A____ as being an unusual blondish brown color and very wavy. She described his eyes as being "squinty." J____D____ stated that the assailant was wearing tennis shoes and socks, a fact that C____A____ did not remember. The assailant continually cautioned the ladies not to look at him and they generally obeyed his instructions. At no time did the mask slip or were they able to catch a glimpse of his full face. No other description of their assailant was testified to by the victims.

The investigating officer, William T. Lazenby, interviewed the victims and received a sales slip for the revolver from C____A____'s husband. Officer Lazenby put a description of the pistol, along with the serial number, in the National Crime Information Computer. On July 3, Officer Lazenby received information from the Laredo Police Department that they had a suspect in custody who was driving a vehicle reported stolen from Beeville, and he had in his possession the pistol taken from C____A____'s residence. As a result of a conversation with the Laredo suspect, Valentine Fragosa (appellant's half-brother), Officer Lazenby brought in a suspect by the name of Kirk Doud. C____A____ listened to Mr. Doud's voice and viewed him through a two-way mirror. As a result of the viewing on July 11, C____A____ said that Mr. Doud was not her assailant. Officer Lazenby then interviewed Valentine Fragosa and was told that he had obtained the pistol from appellant. This testimony was received without objection.

The appellant was interviewed and photographed and the resulting picture was made part of a photographic lineup conducted by Detective Lazenby with C____A____ on August 27, 1985. The photographs were exhibited to C____A____ with the lower part of each face covered. After briefly studying the photographs, she chose appellant's.

The same photographic lineup was shown to J____D____ on August 29. J____D____ testified that none of the photographs exhibited to her appeared to be that of the assailant; however, one had hair similar to that of the assailant. The one with hair similar to the assailant was not the appellant. Someone then pointed to appellant's photograph and informed J____D____ that this was the man identified by C____A____. J____D____ disagreed.

Several days later, at the district attorney's office, J____D____ observed a stack of color photographs laying in a pile on a desk. She recognized the picture on the top as that of her assailant. The photographs were then taken away from her. Later, when she came to court, the appellant was pointed out to her as the defendant. Both she and C____A____ subsequently identified the appellant in court as the one who had assaulted them. J____D____ testified that her earlier inability to identify appellant in the photographic lineup was due to the fact that his hair was wet and slicked back which made him unrecognizable to her.

Other than the identification by C____A____ and J____D____, there was slight evidence connecting the appellant to the crime. Valentine Fragosa was called by the State. Mr. Fragosa was under indictment for unauthorized use of a motor vehicle. He testified that the statement he had given on September 9, 1985, that the appellant had given him the pistol, was not true. He testified that Ruben Gonzales, Jr., and the appellant drove to George West at Fragosa's request to give him a ride back to Beeville. The appellant and Mr. Gonzales arrived in Mr. Gonzales' car at a filling station where Mr. Fragosa was waiting. While the appellant was putting gasoline in the Gonzales automobile, Fragosa climbed in the back seat and unintentionally kicked a pistol under the driver's seat. He removed it from under the driver's seat. Fragosa also admitted telling Lazenby that someone named Jerry had given him the gun and that he "might have told Lazenby" that Kirk Doud had given

him the gun. The pistol that Fragosa removed from the car was the same one that belonged to C____A____ and her husband. On the way back to Beeville from George West, Gonzales stopped the car and Fragosa fired five shots from the car alongside the road.

Ruben Gonzales, Jr. testified that the appellant asked him to drive to George West, that at George West they picked up Fragosa at a truck stop and drove straight back to Beeville. Mr. Gonzales said he did not see any gun nor did he see Fragosa fire a pistol from his car.

Appellant's witnesses testified that they knew him well and had never seen him with red shorts or T-shirt. The appellant did not take the stand.

Accompanying appellant's motion for new trial was an affidavit of J____D____ dated November 27, 1985, which states in pertinent part:

On November 19, 1985, during the trial of Arthur Roy Autry, on the charge of aggravated rape, I identified Mr. Autry as the person who raped me on the morning of June 30, 1985, in Beeville, Texas. Following this identification, I had an opportunity to closely study Arthur Roy Autry as he was seated in court. I now believe, that he was not the person that raped [C____A____] and myself on June 30, 1985. I have come to this conclusion for the following reasons:

(1) [C____A____] and I concluded after the rape that our unknown assailant had green or hazel colored eyes. I have now determined that Arthur Roy Autry has brown eyes;

(2) Our attacker did not have a part in his hair and allowed it to fall freely on his forehead. And [sic] now realize that Arthur Roy Autry's hair is parted in the middle and there are cow licks that keep the hair from falling over his forehead. My assailant did not have cow licks.

The trial judge held a hearing on the motion for new trial and at that hearing the only evidence tendered or admitted was the

above-quoted affidavit. No witnesses were called.

Appellant's sole defense at trial was mistaken identity. By his first ground of error, appellant complains of the pretrial photographic lineup, on the basis that it was so suggestive that it resulted in misidentification.

■ Convictions based on eyewitness testimony at trial, after pretrial identification of the defendant, will only be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Garcia v. State*, 626 S.W.2d 46, 54 (Tex.Crim.App. 1981); *Aumada v. State*, 657 S.W.2d 890 (Tex.App.—Corpus Christi 1983, pet. ref'd); *Lacey v. State*, 653 S.W.2d 528, 529 (Tex. App.—Corpus Christi 1983, pet. ref'd).

■ Appellant argues that C____A____'s rapid, positive identification of him at the photographic lineup "seems odd" since she only observed the top half of her attacker's face during the hour that he was raping her and J____D____. We have reviewed the testimony and photographic lineup, and we find no evidence of anything impermissibly suggestive in this pretrial identification procedure. Appellant also argues that the procedures surrounding J____D____'s photographic lineup, explained above, were so improper and suggestive as to result in J____D____'s misidentification of appellant as the assailant.

At trial, the State did not elicit identification testimony from J____D____ on direct examination. She testified as to the events of the night of the rapes. The testimony regarding the pretrial photographic lineup and J____D____'s subsequent positive identification of appellant was first elicited by defense counsel on cross-examination of J____D____.

■ Where appellant's counsel elicits testimony from the State's witness on cross-examination, the appellant cannot later complain of the impropriety of the admission of that evidence on appeal. *Ad-* *ams v. State*, 685 S.W.2d 661, 669 (Tex. Crim.App.1985); *Ingham v. State*, 679 S.W.2d 503 (Tex.Crim.App.1984); *Wilkerson v. State*, 707 S.W.2d 756 (Tex.App.— Fort Worth 1986, no pet.); *Wigley v. State*, 705 S.W.2d 264 (Tex.App.—San Antonio 1986, no pet.).

Appellant's first ground of error is overruled.

In his second ground of error, appellant complains of the trial court failing to grant his motion for new trial which, appellant contends, was based on newly discovered evidence, i.e., J____D____'s affidavit, which was attached to his motion for new trial.

The trial judge held a hearing on the motion for new trial but the only evidence offered was the witness's affidavit that accompanied the motion initially.

A motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial court. The trial court's denial of such motion should not be disturbed on appeal absent a clear abuse of that discretion. *Jones v. State*, 711 S.W.2d 35 (Tex.Crim.App.1986); *Etter v. State*, 679 S.W.2d 511 (Tex.Crim.App. 1984).

■ In order to be entitled to a new trial based on newly discovered evidence, an accused must show that there is new evidence, that is competent and material, that was unknown to the accused at the time of trial and, that the accused's failure to discover the evidence prior to trial was not a result of any lack of diligence on his part. Once these have been established, the accused has made a prima facie case for the granting of his motion. *Jones v. State*, 711 S.W.2d 35, 36 (Tex.Crim.App.1986).

Nevertheless, should it appear to the trial court that under the circumstances of the particular case the credibility or weight of the new evidence is not such as would probably bring about a different result upon a new trial, it is within the trial court's discretion to deny the motion. *Jones v. State*, 711 S.W.2d at 36–37.

In most cases of retraction of inculpatory testimony by a witness, circumstances have placed the credibility of the recanting witness in issue. Where the witness had recanted his testimony in a sworn affidavit and, later, asserted that the trial testimony was correct after all, the trial court's denial of the motion for new trial was upheld. *See, Tiroff v. State,* 164 Tex.Cr.R. 215, 297 S.W.2d 826 (1957); *Kilpatrick v. State,* 155 Tex.Cr.R. 609, 237 S.W.2d 996 (1951); *Jordan v. State,* 153 Tex.Cr.R. 466, 221 S.W.2d 246 (1949); *Adell v. State,* 152 Tex. Cr.R. 152, 211 S.W.2d 575 (1948). Where the circumstances of the retraction were inherently suspicious, such as a retraction by an accomplice witness, *Dillard v. State,* 550 S.W.2d 45 (Tex.Crim.App.1977); *Wilson v. State,* 445 S.W.2d 213 (Tex.Crim. App.1969), or a retraction in an incest case by the daughter of the defendant (who had earlier confessed to the crime), *Williams v. State,* 375 S.W.2d 449 (Tex.Crim.App.1964), the trial court's decision has been upheld.

In the instant case, affiant has not subsequently retracted her sworn affidavit. Nor is there any relationship or suspicious circumstance present to cast doubt on the credibility of J____D____'s affidavit.

■ The affidavit contains new evidence that is both competent and material to the case, which was unknown to appellant at the time of trial and which could not have been discovered by the exercise of due diligence. The new evidence would certainly have affected the jury's deliberations in a case such as this, where the sole issue was identity and where one of the two victims denied that appellant was the attacker. This new evidence, if believed by the jury, would have injected reasonable doubt into the case. *Jones v. State,* 711 S.W.2d 35, 40 (Tex.Crim.App.1986); *see Schwartz v. State,* 141 Tex.Cr.R. 456, 149 S.W.2d 96 (1941).

We hold that the new evidence, in the form of J____D____'s affidavit, was such as might cause a different verdict on another trial. Under the circumstances we conclude that the trial court erred in denying appellant's motion for new trial.

Appellant's second ground of error is sustained. The judgment of the trial court is reversed and the cause is remanded.